[Matson v. Maupin & Co.]

# Matson *v.* Maupin & Co.

*Action on the Case for Personal Injuries inflicted by Defendants' Steer.*

1. *Action for personal injuries inflicted by domestic animal; degree of care required of defendant.*—In an action for the recovery of damages for personal injuries sustained by plaintiff in being knocked down and run over by a steer chased or driven by defendants' servants along the streets of a city, a charge given at the defendants' request, instructing the jury that "if the defendants and their employees, in the management of the steer, exercised such care as men of ordinary prudence and caution would have exercised under similar circumstances, then the defendants are not responsible for the misfortune to plaintiff," lays down a correct rule as to the degree of care required of the defendants and their servants in such case.

2. *Same.*—Nor is such charge rendered subject to criticism by reason of the fact that it embodies the further proposition, that "for the convenience of mankind in carrying on the affairs of life people, as they go along public roads, must expect or put up with such mischief as reasonable care on the part of others can not avoid."

APPEAL from Mobile Circuit Court.

Tried before Hon. WM. E. CLARKE.

This was an action by Matthew Matson against R. L. Maupin & Co., in which the plaintiff sought to recover damages for personal injuries sustained by him in being run over and knocked down by a steer belonging to the defendants, while chased or driven through the streets of the Port of Mobile by defendants' servants. The cause was tried on the plea of not guilty, among others, the trial resulting in a verdict and judgment for the defendants. As the evidence tended to show, the defendants were engaged in selling stock and cattle sent to them upon commission, and had a stock-yard at the northern extremity of the city. The steer in question was sent to them the evening prior to the infliction of the injury complained of, and was placed in the stock-yard, where it remained until the next morning, exhibiting no vicious tendencies. When, on the morning of the accident, the cattle which had been sold were turned out of the stock-yard, the steer broke by defendants' servants placed on each side of the gate to guide the course of the cattle, and ran off, going through some of the principal streets of the city. Two of defendants' servants followed the steer on horseback, and while chasing and seeking to recover it, it ran against the plaintiff, knocking him down, and inflicting severe injuries. As the evidence tended to show, the steer

was mad and dangerous, and that the servants, in following and chasing it, used the whip; and that, just prior to the injury, one of them whipped the steer in the face, and that it, attempting to gore the horse on which the servant was riding, dashed behind it, and upon the plaintiff. Whether the servants conducted themselves properly and with due care, in whipping the steer in the face, there was a conflict in the evidence. It was shown that the steer was running in a different direction from the one in which it was sought to drive it; and the testimony of most of the witnesses tended to show that "the usual way to turn a steer was to ride in front of it and whip it in the face;" while that of others tended to show that such treatment was wrong, and tended to infuriate the animal, and to make it dangerous,

The court charged the jury, at the defendants' written request, "that for the convenience of mankind in carrying on the affairs of life people, as they go along public roads, must expect or put up with such mischief as reasonable care on the part of others can not avoid; and that if the defendants and their employees, in the management of the steer, exercised such care as men of ordinary prudence and caution would have exercised under similar circumstances, then the defendants are not responsible for the misfortune to plaintiff." To this charge the plaintiff excepted, and it is here assigned, *inter alia*, as error.

J. L. & G. L. SMITH, for appellant.

R. H. CLARKE, *contra.*

SOMERVILLE, J.—The rule laid down by the court for the guidance of the jury was, in our judgment, correct as to the degree of care required of the defendants and their employees, in the act of driving or managing the steer, from which the plaintiff received his injury. This is stated to be "such care as men of ordinary prudence and caution would have exercised under *similar circumstances.*"

We do not understand this instruction to attach any rigid and unelastic meaning to the phrase "ordinary prudence and caution," which is but a synonym for ordinary care. *Care* and *negligence* are terms entirely relative, varying in degree with every possible change of circumstances. It is manifest that " ordinary care" may mean very slight care in one state of circumstances, and comparatively very great care in another. One may drive a vehicle over a country road at a rapid rate of speed, and yet be free from every imputation of negligence, while, if he drive at the same rate through the streets of a populous city,

[Matson v. Maupin & Co.]

he would be guilty of the grossest want of care. Yet, the measure of his legal duty in each case would be the exercise of ordinary care, graduated to suit the hazards of each changing exigency.— *Williams v. Richards*, 3 Carr. & K. 81. So, as aptly remarked in the argument of this cause at the bar, the ordinary care which is exacted from one person in the custody of a valuable jewel, is the same in legal principle, though different in degree, from the ordinary care required from another as the custodian of a grindstone. In the one case, it is the care usually taken by prudent custodians of jewels, and in the other that usually taken by prudent custodians of grindstones. In each case it is the care which the nature of the subject and the surrounding *circumstances* reasonably demand.—Cooley on Torts. 630 ; Shear. & Redf. Negl. § 7.

It is insisted that the court erred in not defining the degree of care required of the defendants, to be such care as men of ordinary prudence and caution *should* have exercised under similar circumstances. The words *should* and *would* each evidently import the same meaning in this connection, the best authorities using them interchangeably. The measure of care exacted is in accordance with what prudent and cautious men usually do in like circumstances, and upon failure to do which, they are no longer entitled to be called prudent and cautious. Hence, it may be said that they "would" or "would not" do something which the particular exigency required. Shear. & Redf. Negl. § 7 ; *Blyth v. Birmingham Waterworks Co.*, 11 Exch. 781.

The business of defendants was that of dealers in cattle, frequently involving the duty of driving and delivery. This was an ordinary business, as ancient perhaps as the oldest phases of commercial traffic. It required no extraordinary skill, and was properly carried on through the agency of employees, who could afford to pursue it only, perhaps, because unfitted for the higher and more profitable vocations of life. The principals could scarcely be chargeable with culpable negligence, so long as the agents continue to discharge the duties imposed upon them by the exercise of ordinary care—such as was usually exercised by prudent and cautious men engaged in the like business under like circumstances. The law would be unreasonable in its demands to exact more.

The accident in the present case was produced by an extraordinary and abnormal phase of the defendants' business—one which the exercise of ordinary skill or foresight might not have anticipated. "No one is ordinarily guilty of culpable negligence by reason of failing to take precautions which no other man would be likely to take under the same circumstances." Shear. & Redf. Negl. § 6 ; *Blyth v. Birmingham Waterworks*

[Prickett & Maddox v. Sibert, Adm'r.]

*Co., supra* ; *Bizzell v. Booker*, 16 Barb. (Ark.) 308. It was said in a recent case, decided by the English Court of Exchequer, that " for the convenience of mankind, in carrying on the affairs of life, people, as they go along public roads, must expect, or put up with such mischief as reasonable care on the part of others can not avoid."—*Holmes v. Mather*, 16 Am. Rep. 384. This observation seems free from criticism, and appears to have been the authority suggesting the charge of the court given by request of defendants, to which exception is taken.

The charge of the court was correct, and the judgment is affirmed.