## J. P. FISHER v. MONONGAHELA C. RY. CO.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued November 7, 1889—Decided January 6, 1890.
[To be reported.]

1. A motion for a compulsory nonsuit is, in effect, a demurrer to the plaintiff's evidence, which evidence must therefore be accepted as true, and every reasonable inference of fact which a jury might draw from it in the plaintiff's favor, must be drawn from it by the court, in passing upon the motion.
2. What constitutes negligence, in a given case, is a question for the jury whenever material facts are disputed, or even in doubt, or inferences of fact are to be drawn from the testimony; and it is then the exclusive province of the jury to determine the facts and apply to them the law declared by the court.
3. The line of demarcation in this respect between the duty of the court and that of the jury should be carefully guarded; and, while the court

Statement of Facts.

should never permit the jury to disregard or evade its instructions, it should be equally careful not to take upon itself the determination of facts about which there may be any question.

(*a*) The plaintiff was knocked down and injured at a railroad crossing by a train of a dozen freight cars backing over the crossing at a considerable rate of speed. No warning of its approach was given by whistle, bell, or otherwise. There was neither person nor light upon the rear end car.

(*b*) The accident occurred early in the morning, while it was yet quite dark, and a recent fall of snow tended to deaden the sound of the approaching train. In crossing the railroad the plaintiff first encountered a siding. He testified that before stepping upon it, he stopped, looked and listened, but neither saw nor heard the train.

(*c*) Twenty-three feet beyond the siding he reached the main track, between which and the siding, and on each side of the crossing, were piles of metal obstructing the view, their edges being three feet from the rail of the main track. Almost immediately after taking the first step upon the main track the train struck the plaintiff:

4. Upon such evidence, it is a manifest invasion of the constitutional province of the jury for a trial judge to say there is no evidence of negligence on the part of the railroad company, or that the plaintiff was guilty of contributory negligence, both of these questions being for the jury on the evidence.

Before Paxson, C. J., Sterrett, Clark, Williams, McCollum and Mitchell, JJ.

No. 234 October Term 1889, Sup. Ct.; court below, No. 306 September Term 1888, C. P. No. 1.

On July 11, 1888, J. P. Fisher brought trespass against the Monongahela Connecting Railway Company, to recover damages for personal injuries alleged to have been sustained by him in consequence of negligence of the defendant. The defendant's plea was not guilty.

At the trial on February 25, 1889, before Stowe, P. J., the following facts were shown on the part of the plaintiff:

The defendant's railway passes through the yard of the American Iron Works in the city of Pittsburgh. On the south side of its main track, is a siding which gradually diverges therefrom. About 125 feet west from the point at which the siding leaves the main track, both tracks are crossed by a wheelbarrow way, which is planked and used in transporting metal between different departments of the iron works, and is also used as a passage way by large numbers of the workmen there em-

ployed, while going to and from their work and passing be-
tween different parts of the premises. At the time of the
accident, a quantity of pig iron was piled on each side of the
barrow way and between the siding and the main track. The
opening between the piles at the barrow way was between
eight and twelve feet wide. The pile occupying the triangle
formed by the main track, the siding and the barrow way, was
higher than a man's head, and its northern edge was at a dis-
tance of about three feet from the southern rail of the main
track. The distance between the siding and the main track at
the crossing of the barrow way was 23.4 feet.

The plaintiff was employed at the American Iron Works,
and was familiar with the ground surrounding the intersection
of the barrow way with the defendant's tracks. On the morn-
ing of December 27, 1888, about seven o'clock, while on his
way to his work, he was proceeding along the barrow way.
When he came close to the siding he encountered a man wheel-
ing metal, who called to him to "look out." The plaintiff then
stepped aside to let him pass, and before starting again looked
up and down the railroad track, but neither saw nor heard any
train approaching. Crossing the siding, he proceeded between
the piles of metal, and, without again stopping or looking along
the track, attempted to cross the main track. Just as he had
set one foot across the southern rail, he heard some one calling
"Look out!" He stopped, but, before he could step back, a
train of twelve to fifteen freight cars that were being backed
along the main track, coming from the east, struck him, inflict-
ing upon him severe injuries.

The plaintiff testified that the morning was very dark and
he could not see along the track more than fifteen or twenty
feet, and did not see the train approaching; that the siding
was straight from the crossing down to its junction with the
main track, and if there had been light enough he could have
seen this train when he stopped at the siding and looked along
the track; that there was snow on the rails, which deadened
the sound of the wheels; that neither bell nor whistle was
sounded, there was no signal of any kind given to warn a per-
son that there were any cars in the yard, and there was no
flagman or watchman stationed at the crossing. Other wit-
nesses for the plaintiff testified respecting the character of the

morning on which the plaintiff was injured, one of them saying it was rather dark, and another stating that it was "just beginning to turn the break of the day, just about seven o'clock," and that there was light enough to see 50 or 100 feet. John M. Triplett, a witness for the plaintiff, testified on cross-examination, that a man standing in the space between the piles of metal, three feet away from the defendant's main track, could by turning his head to the right see down that track, in the direction the train came from, at least 40 feet. Thomas Harrington testified that since the accident a man had been stationed at the crossing to warn persons of approaching trains.

At the close of the plaintiff's testimony in chief, the defendant's counsel moved that the court enter a judgment of nonsuit, for the reasons: (1) That no negligence had been shown on the part of the defendant; (2) that the plaintiff's own case showed that the accident was caused by contributory negligence on the plaintiff's part.

Judgment of nonsuit was entered as moved for, with leave, etc., and subsequently, on argument of a rule to show cause why the nonsuit should not be lifted, the rule was discharged. Thereupon the plaintiff took this appeal, assigning as error the entry of the judgment of nonsuit and the order discharging the rule to show cause why the same should not be lifted.

*Mr A. H. Clarke* (with him *Mr. Thos. M. Marshall, Mr. Thos. M. Marshall, Jr.,* and *Mr. A. M. Imbrie*), for the appellant:

We do not deny the existence of the rule that a person crossing a railroad is required to stop, look and listen, before entering upon the track way. This the plaintiff did. But if it is the duty of a citizen to stop, look, and listen, surely it is the duty of those operating dangerous machinery, to keep the engine and cars in a condition that they can be seen by those who do stop, look, and listen. We therefore submit that this was a clear case where the standard of duty varied with the circumstances, and the question of negligence should have been submitted to the jury.

*Mr. John D. McKennan* (with him *Mr. James H. Reed*), for the appellee:

1. It has been repeatedly held by the Supreme Court, that

if a man is struck and injured by a train, immediately upon stepping on a railroad track along which he could have seen, it is conclusive that he did not stop, look and listen, and was therefore guilty of contributory negligence: Carroll v. Penna. R. Co., 12 W. N. 348; Moore v. Railroad Co., 108 Pa. 349; Penna. R. Co. v. Bell, 122 Pa. 58; Marland v. Pittsburgh etc. R. Co., 123 Pa. 487; Penna. R. Co. v. Mooney, 126 Pa. 244.

2. The facts of the present case bring it within the principle of these decisions. The plaintiff was negligent, in that, after leaving the siding, and when he reached the main track, over twenty-three feet from the siding, he did not stop, look and listen, although at that point his view must have been unobstructed by the metal pile, but stepped immediately upon the track where he was at once struck by the train. The proof of his negligence was entirely clear, and the judgment of compulsory nonsuit was properly entered.

OPINION, MR. JUSTICE STERRETT:

The reasons on which the motion for compulsory nonsuit was grounded are, first, because no negligence of defendant contributing to the accident was shown; and second, because it was shown that the plaintiff's own negligence contributed to the injury. The judgment appears to have been entered, generally, on both grounds; but it is scarcely possible that the learned president of the Common Pleas intended to base it even partly on the first. The evidence, tending to prove that the injury complained of was caused by defendant's negligence, was clearly sufficient to not only carry the case to the jury on that question, but also to warrant them in finding in favor of plaintiff. The time, place, and circumstances of the injury were all for the consideration of the jury on that as well as the question of plaintiff's contributory negligence.

According to the evidence, the accident occurred early in the morning, while it was yet quite dark, at a regular crossing, planked and habitually used by many of the employees of the adjacent mill. The train by which plaintiff was knocked down and severely injured consisted of a dozen or more cars, which were being backed over the crossing at a considerable rate of speed. No warning of its approach was given by sounding a whistle, ringing a bell, or otherwise; nor was there any brake-

man or other person on the forward end of the train, or any light there, to give warning of its approach. It was also in evidence that on either side of the track, at the crossing, the view was obstructed by pig metal, which had been piled there by defendant. It further appeared that a recent snow-fall on the track tended to deaden the sound of the approaching train. These and other facts, which the evidence tended to prove, were amply sufficient to require the submission of the case to the jury on both questions. The plaintiff himself testified that, immediately before attempting to cross the track, he stopped, looked and listened, and, not seeing or hearing anything that indicated the approach of a train, he proceeded to cross the track, and was struck by the forward car as it was being backed over the crossing. It is evident, from his statement of the occurrence, that if there had been even a light on the rear end of the train it would have afforded him timely warning of its approach.

The principles of law applicable to such a state of facts as the evidence in this case tended to prove, are too well settled and have been too often stated, to require repetition. In the first place, a motion for a compulsory nonsuit is in effect a demurrer to plaintiff's evidence. It must therefore be accepted as true, and every reasonable inference of fact which a jury might draw from it in plaintiff's favor must be drawn by the court: Miller v. Bealer, 100 Pa. 583; Hill v. Trust Co., 108 Pa. 1; McGrann v. Railroad Co., 111 Pa. 171. Again; what constitutes negligence in a given case, is generally a question for the jury. When the facts are admitted, or so clearly and conclusively proved as to admit of no reasonable doubt, it is the duty of the court to declare the law applicable to them; but, when material facts are disputed, or even in doubt, or inferences of fact are to be drawn from the testimony, it is the exclusive province of the jury to determine what the facts are, and apply them to the law as declared by the court. The line of demarcation, in that respect, between the duty of the court and that of the jury, should be carefully guarded. While, on the one hand, the court should never permit the jury to disregard or evade its instructions as to matters of law, it should be equally careful not to invade the province of the jury, and take upon itself the determination of facts about which there may be

any question : Penna. Railroad Co. v. Werner, 89 Pa. 59, 64 ; Germantown Pass. Railway Co. v. Walling, 97 Pa. 55 ; Schum v. Railroad Co., 107 Pa. 8.

In view of the evidence in this case, it would be a manifest invasion of the constitutional province of the jury for any trial judge to undertake to say there was no evidence that defendant's negligence caused the injury, or that plaintiff himself was guilty of negligence which contributed thereto. Both of these are questions of fact exclusively for the jury, and not of law for the court.

The case is not within the principle recognized in either of the authorities cited and relied on by defendant.

Judgment reversed, and procedendo awarded.