Illinois Central Railroad Company v. Dick.

CASE 81—PETITION ORDINARY—FEBRUARY 28.

## Illinois Central Railroad Company v. Dick.

APPEAL FROM CARLISLE COURT OF COMMON PLEAS.

1. NEGLIGENCE—INJURY TO ONE LABORING IN VIOLATION OF SUNDAY LAW.—To deprive a party of redress because of his own illegal conduct the illegality must have contributed to the injury. Therefore, the mere fact that one who has been injured through the negligence

Illinois Central Railroad Company v. Dick.

· of another was, when he received the injury, returning from work he had been doing on Sunday, in violation of the Sunday law, will not deprive him of redress, as the same injury would have happened upon any other day under the same circumstances and conditions.

2. CONTRIBUTORY NEGLIGENCE.—It is only in cases of willful neglect, which exists by reason of statute only, and applies only in cases where death results, that contributory neglect is no defense. Where the plaintiff sues for an injury resulting from defendant's ordinary or gross neglect, he can not recover if there was such negligence upon his part that but for it the injury would not have happened.

3. RAILROADS—CARE REQUIRED IN RUNNING TRAINS IN CITY.—A railroad company, in operating its trains within the limits of a city at a point where persons are accustomed to crossing its tracks, is required to use greater caution than is required in the country.

4. SAME—DUTY TO LICENSEES.—A railroad company, by acquiescing for a long time in laborers crossing its yard in going to and returning from their work, thereby licenses them to do so, and imposes upon itself a precautionary duty as to such persons, as they are not to be regarded as trespassers; but they are not absolved from all care for their own safety.

The plaintiff in this case was guilty of contributory neglect in walking along the edge of a switch track in defendant's yard when he knew that a switch train was behind him on the track, and must have known that it was liable to move at any time, and that he would probably not hear any signal of its movement by reason of the noise of a passing freight train. Under such circumstances he had no right to depend upon his hearing alone, but should have exercised his sight, and, as he failed to do so, he can not recover, although the company may have been negligent in failing to give any signal of the train's movement.

5. SUFFICIENCY OF SIGNAL.—In signaling the movement of the train, it was not necessary to ring the bell of the locomotive continuously. If the ringing of the bell upon starting was sufficient "under usual existing circumstances" to give passers-by reasonable warning of the train's approach, nothing more was required.

Z. W. BUGG, R. J. BUGG FOR APPELLANT.

1. Appellee was guilty of such contributory negligence in failing to take any precaution for his safety as will bar a recovery. (Behrens v. Kansas Pac. R. Co., 5 Col.; 8 Am. and Eng. Railroad Cases, 184; Shearman & Redfield on Negligence, secs. 25 and 42.)

2. The fact that appellee was working on Sunday in violation of law constitutes contributory negligence on his part. (Day v. Highland Street R. Co., 15 Am. and Eng. Railroad Cases; Commonwealth v. Lou. & Nash. R. Co., 6 Am. and Eng. R. Cases, 216.)

Illinois Central Railroad Company v. Dick.

J. M. NICHOLS, M. T. SHELBOURNE FOR APPELLEE.

1. The verdict will not be disturbed upon the ground that it is not sustained by the evidence, unless it is flagrantly against the evidence. (McLeod v. Ginther, &c., 80 Ky., 407.)

2. If there is any evidence whatever tending to show negligence, the question should not be taken from the jury. (Nichols v. Chesapeake, &c., R. Co., 2 S. W. Rep., 182; Dolfinger, &c., v. Fishback, 12 Bush, 479; 11 Am. & Eng. Enc. of Law, 242; Brown v. Sullivan, 10 S. W. Rep., 288.)

The evidence in this case supports the finding of the jury that appellee was not guilty of negligence.

JOHN W. RAY ON SAME SIDE.

1. The accident in this case occurred within the limits of a city, and, therefore, the case is within the rule laid down in Shelby's Adm'r v. Railroad Co., 85 Ky., 224; Schuster v. Railroad Co., 7 S. W. Rep., 874; Conley v. Railroad Co, 89 Ky., 402.

2. Contributory negligence will not prevent the plaintiff from recovering, unless, for this negligence, the injury would not have occurred, or if the defendant could, by the exercise of ordinary care, have avoided the consequences of plaintiff's negligence. (Sullivan v. Louisville Bridge Co., 9 Bush, 90.)

3. The fact that plaintiff was working on Sunday in violation of law does not prevent him from recovering, as the same causes would have produced the same results on any other day. (Cooley on Torts, 157.)

CHIEF JUSTICE HOLT DELIVERED THE OPINION OF THE COURT.

The appellee, William Dick, was engaged with many other workmen in building caissons at the water's edge in the city of Cairo, Illinois, to be used in constructing a bridge over the Ohio river at that point.

Between where they were at work and the houses of the city, and upon the top of the levee, was the switch yard of the appellant. It was usually called the "transfer yard," because the trains of the railroad were transported over the river at that place. The appellant had seven or eight tracks close to and parallel with each other at this point, and extending for a considerable distance along the immediate top

of the river bank.   Several locomotives were constantly employed in the yard, and it is shown that upon an average three hundred cars were moved within it every twenty-four hours.   The workmen had to cross these tracks in going to and from their work.   It had been in progress for about a year, from seventy-five to one hundred men being employed.   All this was well known to those in charge of the appellant's trains, and its authorities had for a long time permitted these workmen to thus cross its tracks ; indeed, the bridge, while not being built by it, was intended for its use.

When appellee was injured the men had quit work for dinner.   All of them had crossed all of the tracks, save appellee and another man.   They had done so in part, but upon reaching the main track, and which was the outer one upon the side next to the city, their progress was stopped by a heavy freight train of about eighteen cars, which was moving north, and leaving the city at the rate of about twelve miles per hour.   The appellee's companion remained standing at that point, between the main track and the switch track next to it, until the train passed, when he crossed over in safety.   The appellee did not do so, however.   He walked south between these two tracks as the train was passing, as his route into the city was in a south-westwardly direction.   As he did so, he, by reason of the outgoing passing train, kept near the switch track.   He did not get on it, but walked just at the end of the ties.   Just at this time a train of four or five cars backed south upon the switch track at the rate of about three miles an hour, and the front car, owing to the appellee getting near to

the switch track, struck him, knocking him down, and so mangling his arm that amputation just above the elbow became necessary.

He brought this action for damages, claiming that the injury was caused by the gross neglect of those in charge of the train. The defense is, first, that the appellee was crossing the tracks in going from work being done upon Sunday, the prosecution of which in Illinois is forbidden upon that day, unless it be a work of necessity or charity; and second, that the injury was the result of the appellee's own neglect. The trial resulted in a verdict for three thousand dollars.

The first ground of defense can not be maintained. It is true the appellee was going from work being done by him on Sunday. It is, therefore, said that this illegal conduct upon his part deprives him of all right to sue, and that he could have no redress against any one, even if those in charge of the train had wantonly injured him. Such is not, and ought not, to be the rule. The fact that one when injured is thus violating the law does not place him beyond its protection. If so, he would be at the mercy of others. It can not be fairly said that the work in which the appelleee had been engaged contributed to the injury. . Certainly, it was not calculated ordinarily or naturally to lead to it. There was no such connection between the doing of the work and the accident, that the latter was likely to result from the former. The one did not naturally follow the other, and it could not be reasonably anticipated that it would do so. There was no necessary, or even

probable, tendency from the one to the other. The same causes would have produced the same result upon any other day, and the fact that the accident occurred on Sunday is, therefore, altogether immaterial in considering the cause of it or the question of contributory negligence. All other circumstances and conditions being the same, the same injury would have happened upon any other day as well.

Cooley on Torts, page 155, in speaking of cases arising under the Sunday laws, says: "The principle is that to deprive a party of redress because of his own illegal conduct, the illegality must have contributed to the injury;" and then the author cites this language of Dixon, C. J., in Sutton v. Town of Wauwatosa, 29 Wis., 28: "To make good the defense (of illegality) it must appear that a relation existed between the act or violation of law on the part of the plaintiff, and the injury or accident of which he complains, and the relation must have been such as to have caused or helped to cause the injury or accident, not in a remote or speculative sense, but in the natural and ordinary course of events, as one event is known to precede or follow another. It must have been some act, omission, or fault naturally and ordinarily calculated to produce the injury, or from which the injury or accident might naturally and reasonably have been anticipated under the circumstances."

The switch train had an engineer, fireman and two brakemen in charge of it. The first two named were upon the engine; one brakeman was upon the car next to it, and the other brakeman was upon the

car that struck the appellee. He was, however, at the time hanging upon the east side of it, and the top of it being higher than his head prevented his seeing the appellee, who was at the edge of the west side of the track. It is urged that the train was moving at a greater rate of speed than the ordinance of the city permitted, which is six miles per hour as to freight trains; that it gave no signal, by the blow of its whistle or the ringing of the bell, of its movement; that the brakeman should have been upon the front end of the car to signal danger to passers-by, and warn them of it; and that, for these reasons, the company is chargeable with willful neglect in injuring the appellee, and the doctrine of contributory neglect has no application.

Counsel appear to confound what is known as willful neglect, and which, strictly speaking, exists by reason of statute only, and applies only in cases where death results, with gross neglect. Hence, it is incorrectly argued that the question of contributory negligence can not arise in this case. Undoubtedly the appellant ought not to be regarded as a trespasser upon the yard of the company. In the first place it may be said that the accident occurred within the city limits, and at a point where it might well be expected persons would be crossing the tracks, and where they often did, as appears from the testimony. The tracks were between the river bank and the buildings of the city. At such a point greater caution must be used in operating a train than would be required in the country, because circumstances must necessarily regulate the degree of care to be exer-

cised.    In the second place, however, the appellee was
crossing the tracks by the permission of the company.
It had, by its acquiescence in the work-hands crossing
them for a long time, licensed them to do so.    It was
permitting such use, and it had, therefore, by its own
conduct imposed upon itself a precautionary duty as
to the appellee when he might be crossing its tracks
in going from and returning to his work.    This, how-
ever, did not absolve the appellee from all care upon
his part for his safety.    It did not give him the right
to recklessly place himself in danger from a moving
train, and then hold the company liable for injury.
The testimony shows clearly that the train was mov-
ing slowly, probably not over three miles *per* hour.
The evidence is somewhat conflicting as to whether
the bell of the locomotive was signaling the move-
ment of the train.    It is probable, from the weight
of the testimony, that it was, but it was not required
to do so continuously.    If, upon starting, it gave
reasonable notice, by the ringing of the bell or other-
wise, that it was about to move, and reasonably suffi-
cient to warn those in the locality of its coming, then
this was sufficient.    (Paducah & Memphis R. R. Co.
v. Hoehl, 12 Bush, 41.)

If, however, those in charge of the train were neg-
lectful, yet if there was such negligence upon the
appellee's part that but for it the injury would not
have happened, then he can not recover.    The rule
is thus stated:  "One who is injured by the mere
negligence of another can not recover at law or in
equity any compensation for his injury if he, by
his own or his agent's ordinary negligence or willful

wrong, proximately contributed to produce the injury of which he complains, so that but for his concurring and co-operating fault the injury would not have happened to him, except where the more proximate cause of the injury is the omission of the other party, after becoming aware of the danger to which the former party is exposed, to use a proper degree of care to avoid injuring him." (Shearman & Redfield on Negligence, section 25.)

This rule was followed in the Hoehl case already cited, where it was held that although the evidence might show negligence upon the part of the injuring party, yet if the one injured so contributed that but for it the injury would not have been received, then there can be no recovery, unless the party doing the injury becomes aware of the negligence of the other, and could then, by the exercise of care, have avoided the injury.

In this case the appellee went among the numerous tracks of the railroad, knowing that trains were constantly moving about at that point. He says himself that when he stopped by reason of his progress being cut off by the outgoing train he saw a train about one hundred and fifty yards north of him upon the switch track, but that he paid no further attention to it. If he had remained standing where he then was, as his companion did, until the freight train passed, he could then have crossed the remaining track without danger of injury. Instead of doing so, however, he started south between the two tracks. Conceding that his doing this was not neglectful, yet he says himself that after he did so

he never once looked back to see if the switch train, which he knew was near him, was moving towards him, and instead of keeping in a place of safety between the two tracks he recklessly exposed himself to danger by walking along at the edge of the switch track, when he knew the switch train was liable to move at any moment, and any signal of which he was not likely to hear by reason of the noise of the passing freight train. The two tracks were thirteen feet apart; three, and perhaps four, men could walk abreast between them. The appellee could have passed along between the two passing trains with entire safety, but instead of doing so he recklessly placed himself at the edge of the switch track, without paying any attention whatever to the train, which he knew might come upon him at any moment, and was thereby injured. He knowingly exposed himself to what he knew was constant danger. His own neglectful conduct was the proximate cause of his injury. He had no right to depend upon his hearing and not exercise his sight when he knew that the noise of the passing freight train was likely to prevent his hearing the signal from any approaching train upon the track, upon the edge of which he had needlessly placed himself. It was, in fact, gross negligence upon his part, because it was recklessness as to his own safety, and it is evident the injury was not inflicted wantonly by those in charge of the train.

As this record stands, it is difficult to see upon what testimony, under the instructions, the jury based their verdict. It is palpably against the weight of it, and the judgment is reversed for a new trial, and further proceedings consistent with this opinion.