# Alabama Great Southern R. R. Co. *v.* Guest, Admr.

*Action against Railroad Company to recover for Willful or Wanton Killing.*

1. *Action against railroad company for willful or wanton killing; when averments of complaint improperly stricken.*—In an action by an administrator against a railroad company to recover damages for injuries to plaintiff's intestate resulting in his death alleged to have been caused by the willfulness, wantonness or intentional act of defendant's agents and servants, when a count of the complaint after alleging that defendant's agents and servants while operating a freight train in an incorporated town, uncoupled a portion of the train and allowed three cars to run down the main line of the track without an engine attached to them, then avers that after discovering the intestate's peril and danger the servants or agents of defendant ran said cars against and over the intestate, the further averment that at the hour of the accident "a great many people passed on foot along said track as was well known to defendant's agents and servants," is pertinent and material, and it is error for the court, on motion of defendant, to strike such averments from the count of the complaint; and likewise in such a case it is error for the court to refuse to allow the plaintiff to offer evidence to show the average number of people that walked along the track at the time and place of the killing for six months prior to the killing.

APPEAL from the Circuit Court of DeKalb.

Tried before the Hon. JAMES A. BILBRO.

This action was brought by appellee, J. H. E. Guest, as the administrator of the estate of William Dean, de-

ceased, to recover damages for the killing of the plaintiff's intestate by cars operated on the defendant's road.

The facts of the case are sufficiently set out in the opinion. An appeal is taken from the judgment in the trial court granting a new trial on motion of the plaintiff, and this judgment is assigned as error.

GOODHUE & BLACKWOOD, for appellants.—In order to maintain an allegation of willful, wanton or intentional negligence, is a trespasser injured by a railroad train entitled to show the frequency of the use of the track by trespassers, in order to overcome his own contributory negligence, and fix upon the railroad company the duty of keeping a lookout at that particular place for trespassers? On this proposition the authorities are entirely clear, and extended discussion of them is unnecessary. An examination of them will show that they are squarely to the point: *Glass v. M. & C. R. R. Co.*, 94 Ala. 586; *M. & C. R. R. Co. v. Womack*, 84 Ala. 150; *L. & N. R. R. Co. v. Mitchell*, 32 So. Rep. 735; *Cen. R. R. Co. v. Brunson*, 70 Ga. 207; *S. & W. R. R. Co. v. Meadors*, 95 Ala. 137.

HOWARD & ISBELL, *contra*.—It is the duty of the railroad employes running a train within the incorporated limits of a city or town where necessity may compel or usage sanction walking upon the track at places other than at public crossings, to keep a vigilant lookout, even for trespassers. This proposition is upheld by the weight of authority. See 19 Ency. of Law (1st ed.), 937, and citations to note 3; and *M. & C. Railroad v. Womack*, 84 Ala. 149. The court erred in excluding the evidence from the jury as to the character of the place, the number of people passing there, and in striking from the complaint, on motion, the allegations showing these facts. See *Haley v. K. C., M. & B. R. R. Co.*, 113 Ala. 640; *Highland Ave. & Belt R. R. v. Robins*, 124 Ala. 113. It is the likelihood of peril to the safety of passers by, known to defendant's employes, that makes the duty, and not the place itself.—*Nave's case*, 96 Ala. 264; *Lee's case*, 96 Ala. 261; *M. & C. R. R. v. Martin*, 117 Ala. 367. One crossing a railroad is never a trespasser.—*Glass v. M. & C. R. R. Co.*, 94 Ala. 582.

[Alabama Great Southern R. R. Co. v. Guest, Admr.]

HARALSON, J.—Issue was joined and the case was tried upon counts 2, 3, 6 and 7, each of which sets up that the injury to plaintiff's intestate was caused by the willfulness, wantonness or intentional act of defendant's agents and servants. It is unnecessary to notice the second count, as no question arises on it.

The third count proceeds on the allegation that defendant's agents and servants while operating a freight train in DeKalb county uncoupled it in the town of Fort Payne, detaching the engine, leaving two cars and a caboose to run down the main line of track without an engine attached to them, and after discovering that plaintiff's intestate was in great peril and danger, willfuly, wantonly and intentionally, through its agents or servants, ran said cars upon and against intestate and killed him.

The sixth, like the third, bases the alleged willfulness and wantonness on the allegation, that after discovering intestate's peril and danger, the servants or agents of defendant ran said cars against and over intestate; and the seventh, on the averment, that after the discovery of the intestate's peril and danger by defendant's agents and servants, they could have avoided and prevented said injury but for the willful, wanton and intentional acts of defendant's [servants and agents] in running said cars and caboose upon and over plaintiff's intestate.

The sixth count contained the allegation: "And at said hour [about noon] a great many people passed on foot [along said track], as was well known to defendant's agents and servants." This averment was, on motion of defendant, stricken from this count.

The plaintiff during the trial offered evidence to show that at the point of the killing, from 30 to 50 people walked along said track from 11 A. M. to noon of each day for six months prior to the killing, which evidence, the court, on the objection of the defendant, would not allow.

The trial resulted in a verdict and judgment for the defendant. The plaintiff moved for a new trial on grounds among others, that the court erred in striking

the averment above quoted from the sixth count of the complaint, and in not allowing the plaintiff to introduce the evidence above stated, as to the number of people who passed daily along the track at the point of the killing.

The court granted the motion for a new trial, stating in the judgment entry, that the court was of the opinion and found, that the verdict of the jury was not contrary to the evidence and was not contrary to the charge of the court, but that the court was of the opinion that it erred in excluding said proposed evidence from the jury, and in striking from the complaint the averment as above set out.

The evidence showed without conflict, that the killing of plaintiff's intestate occurred within the limits of the incorporated town of Fort Payne, near the freight depot of the railroad; that there were three tracks at this point, the main line being in the center of the other two, and about eight feet from each; that Main street in said town crosses the railroad tracks just north of the depot building, which is on the south of the street; that intestate had walked south, down the main line, having gotten thereon 35 or 40 yards north of the north side of the street where it crosses the railroad, and had walked on the the line clear across the street with his back to the cars, and had proceeded to a point south of the crossing, when he was overtaken and struck by the cars; that the house where he lived, was on the east side of the track and south of the crossing, about 100 yards, and deceased had proceeded down to a point nearly opposite his house, as he had frequently done. It was further shown, that defendant's train was uncoupled, about 200 yards north of Main street, and two of the cars and a caboose, which overtook intestate, were let down the main track, and the engine and other cars went down on the west side track.

One witness testified to having seen deceased killed; that the cars were going pretty fast, and the brakeman who was sitting on his brake looking towards town, did not put his brake up until after the cars had run over deceased. Another testified, that he saw the cars when they were right on deceased; that the brakeman was

tightening his brake just before the collision, and loosened his brake just as soon as deceased was struck; that the brakeman was not looking towards town, and the cars were not running very fast.

Another witness for plaintiff testified that in his opinion the cars were moving 15 or 16 miles an hour.

The conductor of the train testified for the defendant, that the cars struck deceased 65 or 70 feet below the crossing; that he had come down on the caboose and stepped off onto the platform of the depot, as the cars passed, and he had not seen deceased before the cars struck him, at which time they were going about two or three miles an hour; that one of the brakes was in good order, and the other was out of shape, and the cars could have been stopped with the good brake in fifteen feet.

One of the brakemen testified that the car was just about to strike deceased when he saw him; that he set up the brake on the front car, and it would not hold, when he ran back to the other brake and set it up and notified the brakeman in the caboose to set up his brake, when the train stopped, and the train was going about three miles an hour.

It cannot be denied that plaintiff's intestate was a trespasser on defendant's track, to whom the company owed no duty except the exercise of reasonable care to avoid injuring him, if and after his peril became apparent to its employes, but they had no right to kill him on this account, if they could avoid it.—*Haley v. K. C., M. & B. R. R. Co.*, 113 Ala. 640. The doctrine thus stated and recognized, is not to be taken as of unqualified and unshaded application in all cases. A trespasser may not be yet discovered on the track of the company, but if the employe had reason to believe he was there, it would be wantonness to take no care not to kill him. "When a railroad runs its track through districts of a city, town or village densely populated, and the demands of trade and public intercourse necessitate the frequent crossing of the track, it is the duty of those operating an engine over the track in such places to keep a lookout. This duty is not specially imposed by statute; but arises from

the likelihood that in such places there are persons on the track, and the bounden duty to guard against inflicting death or injury in places and under circumstances where and when it is likely to result unless due care is observed. The duty arises when the circumstances exist which call for its exercise."—*S. & W. R. R. Co. v. Meadors*, 95 Ala. 137; *L. & N. R. R. Co. v. Webb*, 97 Ala. 308; *L. & N. R. R. Co. v. Anchors*, 114 Ala. 492; *M. & C. R. R. Co. v. Martin*, 117 Ala. 367; *L. & N. R. R. Co. v. Brown*, 121 Ala. 221.

"To run a train at a high rate of speed and without signals of approach, where the trainmen have reason to believe there are persons in exposed positions on the track, as over an unguarded crossing in a populous district of a city, or where the public are wont to pass on the track with such frequency and in such numbers—facts known to those in charge of the train—as that they will be held to a knowledge of the probable consequences of maintaining greater speed without warning, so as to impute to them reckless indifference in respect thereto, would render the employer liable for injuries resulting therefrom, notwithstanding there was negligence on the part of those injured and no fault on the part of the servants after seeing the danger."—*Ga. Pac. R. R. Co. v. Lee*, 92 Ala. 262; *Highland A. & B. R. R. Co. v. Robbins*, 124 Ala. 113.

The facts of this case leave ample room for the application of this doctrine. The killing occurred within the limits of an incorporated town, and at or near its main street; a cut of two cars and a caboose detached from the train was allowed to run down the main track at a speed estimated by different witnesses, at from three to fifteen or sixteen miles an hour, with one of the brakes on the cars out of working order. The court struck from the sixth count as matter of irrelevant consideration, as above stated, the averment, that at the hour of the occurrence a great many people passed on foot, as was well known to defendant's agents and servants, and refused to allow the plaintiff to prove that at the point of the killing, from 30 to 50 people walked along said track

from 11 A. M. to noon of each day (between which hours the plaintiff's intestate was killed), for six months prior to the killing. These were conditions which according to the authorities were proper to be proved for the consideration of the jury, in determining whether the conduct of defendant's employes was wanton, overcoming any negligence of the intestate which may have contributed to his injury. The court erred in its rulings in this respect, in striking the part of the sixth count referred to, and in excluding the evidence offered, and very properly sought to correct the error by granting a new trial.

Affirmed.