(78 South. 645)

ATLANTIC COAST LINE R. CO. v. JONES.
(3 Div. 280.)

(Court of Appeals of Alabama. Feb. 12, 1918. On Rehearing, April 9, 1918.)

1. RAILROADS ⬤➡350(16) — RAILROAD CROSSING—DUTY TO STOP, LOOK, AND LISTEN.

While a driver, who approaches the crossing of a railroad over which trains are operated on regular schedules and at short intervals, was guilty of negligence, as a matter of law, if he fails to stop, look, and listen at the time and place and under circumstances affording a discovery of danger from approaching trains, such rule does not apply to a track intersecting a public street, where the demands of trade and public intercourse necessitate the constant use of the street by the public, and where the tracks are very infrequently used and at the regular intervals.

2. RAILROADS ⬤➡307(4), 312(6), 316(2)— CROSSING ACCIDENT—DUTY OF RAILROAD COMPANY.

A railroad company, operating trains over public street crossings frequently used, must observe statutes and ordinances requiring signals, and must keep a diligent lookout, maintain flagmen, if necessary, and operate the train at a safe speed.

3. TRIAL ⬤➡260(1) — REQUESTS — INSTRUCTIONS GIVEN.

It is not error to refuse an instruction covered by other instructions given.

On Rehearing.

4. RAILROADS ⬤➡350(13)—CROSSING ACCIDENTS—JURY QUESTION.

In an action for injuries to property due to a collision at a railroad crossing, where the burden of proving contributory negligence was on defendant in order to be entitled to an instruction, that plaintiff was guilty of contributory negligence in failing to stop, look, and listen, it was necessary to present a case so free from doubt that the inference of negligence to be drawn from the facts was clear and certain.

5. RAILROADS ⬤➡344(1) — CROSSING ACCIDENTS—CONTRIBUTORY NEGLIGENCE—PLEADING.

A plea which merely avers that the injury occurred at the intersection of a public highway and a railroad crossing, and that plaintiff failed to stop, look, and listen, is not suffi-

cient to present the defense of contributory negligence, in the absence of an averment that plaintiff was guilty of negligence proximately contributing to the injury.

6. RAILROADS ⬤➡346(6) — CROSSING ACCIDENTS—CONTRIBUTORY NEGLIGENCE.

A mere showing that an injury occurred at the intersection of a public highway and a railroad track, and that plaintiff failed to stop, look, and listen, does not justify a conclusion that plaintiff was guilty of contributory negligence, in the absence of showing that it was negligence to proceed without halting or looking and listening.

Appeal from City Court of Montgomery; Gaston Gunter, Judge.

Action by D. W. Jones against the Atlantic Coast Line Railroad Company for injuries to personal property. From a judgment for plaintiff, defendant appeals. Affirmed, and rehearing denied.

The facts sufficiently appear. The following charges are referred to in the opinion:

(1) and (2) Affirmative charge for defendant.

(4) If the jury believe that plaintiff did not stop, look, or listen before attempting to cross the track of the railroad, their verdict must be for defendant.

(5) Same as (4).

(D) Although the jury may believe from the evidence that the agent for defendant in charge or control of the train neglected to use due care and diligence to avoid the collision, this did not relieve plaintiff from the necessity of taking due care and precaution for his safety. Before attempting to cross the railroad track he was bound to use his senses, to stop, look, and listen, in order to avoid the accident in this case from defendant's moving train. If he neglected to stop, look, and listen, but approached defendant's track at such rate of speed on his motorcycle that he was unable to stop his motorcycle, or to slacken his speed so as to avoid the injury complained of, or if using his senses he saw or heard the train coming, and instead of waiting for it to pass he undertook to cross the track, he so far contributed to the injuries complained of as to deprive him of any right to recover, unless you believe from the evidence that, upon the manifestation of plaintiff's peril, those controlling defendant's train failed to use due diligence to prevent the injury.

(E) I charge you that it is plaintiff's duty to look and listen for approaching trains before attempting to cross a railroad track, and that if he failed to do so, then he is guilty of contributory negligence, and is not entitled to recover.

(A) Plaintiff was bound to use his eyes and ears as far as there was opportunity to discover and avoid danger, and if by such use of his senses he might have discovered and avoided the danger, but omitted to do so, and if such omission on his part contributed proximately to produce the injuries complained of in this action. and if without such omission on his part the injury would not have occurred, then, upon this state of fact, plaintiff is not entitled to recover.

John R. Tyson and A. H. Arrington, both of Montgomery, for appellant. Hill, Hill, Whiting & Stern, of Montgomery, for appellee.

BROWN, P. J. It is the duty of a traveler on a public street or highway who approach-

es a railroad track for the purpose of crossing over it, whether at a guarded or unguarded crossing, or whether the crossing is located in a rural country district where the use of the crossing is infrequent, or in a city, town, or village where it is used with great frequency, and whether the railroad is one over which trains are operated on regular schedules and at frequent intervals, or is a side track or switch track infrequently used and at irregular intervals, to exercise reasonable care—that is, the care that an ordinarily prudent man would exercise under like circumstances—to avoid collision with passing trains, and a failure to exercise such care is negligence, and affords a basis for a complete defense to an action for injuries caused by the simple negligence of the trainmen, unless such simple negligence occurs subsequent to the peril thus occasioned, and its discovery by the trainmen in time to avert such injury. Central of Ga. Ry. Co. v. Foshee, 125 Ala. 199, 27 South. 1006; Southern Ry. Co. v. Shelton, 136 Ala. 209, 34 South. 194; L. & N. R. R. Co. v. Moran, 190 Ala. 108, 66 South. 799; L. & N. R. R. Co. v. Loyd, 186 Ala. 119, 65 South. 153; Bailey v. Southern Ry. Co., 196 Ala. 133, 72 South. 67.

" 'Care' and 'negligence' are terms entirely relative, varying in degree with every possible change of circumstances. It is manifest that 'ordinary care' may mean very slight care in one state of circumstances, and comparatively very great care in another. One may drive a vehicle over a country road at a rapid rate of speed, and yet be free from every imputation of negligence, while, if he drives at the same rate through the streets of a populous city, he would be guilty of the grossest want of care. Yet, the measure of his legal duty in each case would be the exercise of ordinary care, graduated to suit the hazard of each changing exigency." Matson v. Maupin, 75 Ala. 312; Williams v. Tyler, 14 Ala. App. 615, 71 South. 51; Alabama City, Gadsden & Attalla Ry. Co. v. Bullard, 157 Ala. 618, 47 South. 578.

"Courts in these matters deal only with ordinary people, that is, the sort of a man which constitutes the standard by which all men and women are to be judged on the question of negligence vel non." Central of Ga. Ry. Co. v. Foshee, supra.

Ordinary care in this sense is the common prudence exercised by an ordinarily prudent man in respect to his own affairs. Seales v. Edmondson, 71 Ala. 509; 4 Mayf. Dig. p. 295, §§ 16, 17; Matson v. Maupin, 75 Ala. 312.

[1] While it is well settled that a traveler who approaches the crossing of a railroad over which trains are operated on regular schedules and at short intervals is guilty of negligence as a matter of law if he fails to stop, look, and listen at a time and place and under circumstances affording a discovery of danger from approaching trains, this application of the doctrine is not appropriate to a switch track that intersects and crosses a public street in a city where the demands of trade and public intercourse necessitate the constant use of the street by the public, and where the tracks of the railroad are very infrequently used and at irregular intervals, as in this case, once or probably twice a week. Under such circumstances, it is the right of the public, subject to the duty of using ordinary care, to use the street, and to use it constantly. Southern Ry. Co. v. Crenshaw, 136 Ala. 582, 34 South. 913.

"The question of negligence vel non is a question of law for the decision of the court 'only when the case is so free from doubt that the inference of negligence to be drawn from the facts is clear and certain.' In all other cases, it is a question of fact, for the determination of the jury." E. T., Va. & Ga. R. R. Co. v. Bayliss, 74 Ala. 150; 4 Mayf. Dig. 295, § 23; Mouton v. L. & N. R. R. Co., 128 Ala. 546, 29 South. 602.

To say that the inference of negligence, which is of fact, inevitably arises from the failure to stop, look, and listen under such circumstances, would not only invite a total disregard of the law, but would result in unreasonably obstructing and strangling traffic on such street, and would be contrary to the common practice of reasonably prudent men.

The rule of "stop, look, and listen" is founded on necessity, and has for its purpose the conservation of human life, and at the same time the promotion of commerce, in its efforts to meet the needs of mankind. To apply to the great arteries of commerce over which trains are moved on regular schedules and at frequent intervals a rule that would require the operation of their ponderous trains at a rate of speed that would not imperil the lives of those who might have occasion to cross over their tracks on public thoroughfares would impose a burden that would result in destroying their efficiency. The known danger incident to such crossings is the foundation and reason for the rule that requires the traveler to stop, look, and listen.

Where the reason for the rule is absent, the rule itself is inapplicable, and to apply it where the reason for its application is not present would ultimately invite its destruction. From the circumstances disclosed by the evidence in this record, the inference of negligence does not necessarily arise from the failure of the plaintiff to stop and look and listen, or stop or look or listen. On the contrary, the evidence clearly shows that one could ordinarily cross the track in question along Randolph street without an element of danger from trains, and the question as to whether the plaintiff was guilty of negligence proximately contributing to the injury of which he complains was for the jury. In reaching the conclusions above stated, we have been aided by consulting the following authorities: 2 White's Pers. Inj. on R. R. § 880; Frick v. St. L. & S. F. R. R. Co., 75 Mo. 595, 8 Am. & Eng. R. R. Cases, 280; Illinois, etc., R. R. Co. v. Dick, 91 Ky. 434, 15 S. W. 665; Cleveland, etc., R. Co. v. Doerr, 41 Ill. App. 530; Lindfield v. Old Colo-

ny R. R. Co., 10 Cush. (Mass.) 564, 57 Am. Dec. 124; Beach on Contributory Negligence, § 194; Cooper v. Lake Shore Ry. Co., 66 Mich. 261, 33 N. W. 306, 11 Am. St. Rep. 482; Duame v. Chicago, etc., R. Co., 72 Wis. 523, 40 N. W. 394, 7 Am. St. Rep. 879; Fisher v. Monongahela, etc., R. Co., 131 Pa. 292, 18 Atl. 1016; Atchison, etc., R. Co. v. Morgan, 43 Kan. 1, 22 Pac. 995; O'Conner v. Mo. Pac. R. Co., 94 Mo. 150, 7 S. W. 106, 4 Am. St. Rep. 364; Chicago, etc., R. Co. v. Garvy, 58 Ill. 85.

[2] The law exacts of railroad companies and their employés the exercise of a high degree of care in the operation of trains over public street crossings greatly frequented and used and where human life is likely to be imperiled. Under such circumstances, the law not only imposes the duty of observing the statutes of the state and ordinances of the city requiring signals to be given, but requires that a diligent lookout be kept, and if necessary to a safe operation of the train across the street that a flagman be placed at the crossing or a courier be sent ahead to warn those imperiled, or likely to be, of the approach of the train, and to operate the train at such rate of speed as to render the infliction of injury improbable. 4 Mayf. Dig. p. 295, §§ 18, 19, 21, and authorities there cited; A. G. S. R. R. Co. v. Guest, 136 Ala. 348, 34 South. 968; Id., 144 Ala. 379, 39 South. 654; L. & N. R. R. Co. v. Williams, 183 Ala. 138, 62 South. 679, Ann. Cas. 1915D, 483.

[3] The application of the foregoing principles justified the refusal of charges 1, 2, 4, 5, D, and E requested by the defendant, and if it be conceded that charge A asserts a correct proposition as applicable to the evidence, the same proposition was fully stated in the ex mero motu charge of the court, which is in accord with this opinion, and its refusal does not constitute reversible error.

Affirmed.

### On Rehearing.

But two questions are urged in the application for rehearing, and both relate to a finding as to what is shown by the record, and are thus stated:

"The opinion in this case discloses that the court committed two errors, the first consisting in the statement that the track upon which the train was being operated at the time of plaintiff's injury was 'a switch track' that intersected and crossed a public street in the city of Montgomery, where the demands of trade and public intercourse necessitated constant use of the street by the public. The second error consisted of the statement that the proposition contained in charge A refused to the defendant was fully stated in the oral charge of the court, which was in accord with this opinion."

The undisputed evidence showed that the injury resulted from a collision between the defendant's box car and the plaintiff's motorcycle at the intersection of Randolph street and the tracks of the defendant in the city of Montgomery; the defendant's engineer testifying that the switching crew had been up to the "Seaboard railroad" to get a box car, and that the dummy was pushing the car, and one witness stated that there were several tracks and another that there were seven tracks crossing Randolph street. The train, if such it could be called, consisted of a dummy engine pushing a box car. The undisputed evidence further showed that these tracks were very infrequently used; the defendant's engineer testifying that "they sometimes crossed - that crossing twice a week, and sometimes once a week, and that he could not remember the next time when they crossed it." The evidence also showed that Randolph street was a public street in the city of Montgomery, and that a great many people passed along it at all hours of the day and night; that "people lived along there, and they were coming and going all the time." The evidence also tended to show that ordinarily one could cross over these tracks along Randolph street without an element of danger. The evidence showed that plaintiff approached the track along Randolph street, and that there was a building that obstructed his view of the track up to within about 20 feet of the track. There is no evidence as to what, if any, noise there was in this locality that would have any tendency to hinder one's hearing. The plaintiff testified that he approached the tracks along Randolph street, and that when he got in a position where he could see around the building, he came to a "practical stop," and looked and listened, and that he did not discover the approach of the dummy and car. There is no evidence as to the width of Randolph street, and the evidence was in conflict as to the speed of the car, and as to whether or not any signals were being given as the car and engine approached the street; that on the part of the plaintiff tending to show that the engine and car were being operated at a rate of speed in violation of the city ordinances, and that no signals were being given, while that on the part of the defendant tended to show that the signals were being given, and the engineer testified that he approached this street pushing the car at the rate of about one mile per hour, and that as he approached the street to cross it he gave the engine steam, so as to increase its rate of speed to about 3 miles per hour.

[4] When the statements in the bill of exceptions are construed most strongly against the exceptor, they clearly sustain the conclusion stated in the original opinion. The objections urged in the application for rehearing relate to the defense of contributory negligence, which was pleaded "in short by consent," and the burden of proof as to this issue was on the defendant. To meet this burden, to the extent of entitling it to an instruction that the plaintiff was guilty of contributory negligence if he failed to stop and

look and listen, or to stop and listen, or to look and listen, or to stop and look, it must present a case "so free from doubt that the inference of negligence to be drawn from the facts is clear and certain." E. T., Va. & Ga. R. R. Co. v. Bayliss, supra. Or, as has been said: "We do not think that it can justly be affirmed, as matter of law, that there is a duty to stop in all cases, but we do think that the duty exists in cases where there is an obstruction to sight or hearing, and that where the surroundings are such *that but one conclusion can be reasonably drawn, and that conclusion is that it is negligence to proceed without halting.*" (Italics ours.) L. & N. v. Williams, 172 Ala. 579, 55 South. 218.

[5, 6] It requires no argument or citation of authority to sustain the proposition that a plea which merely avers that the injury occurred at the intersection of a public highway and a railroad track, and that the plaintiff failed to stop and look and listen, would be wholly insufficient to present the defense of contributory negligence. To make such a plea sufficient, an averment that the plaintiff was guilty of negligence which proximately contributed to his injury is absolutely essential. So also the mere showing that the injury occurred at the intersection of a public highway and a railroad track, and that the plaintiff failed to stop and look and listen would be wholly insufficient to justify the court in announcing the conclusion that the party is guilty of contributory negligence, but it must certainly appear from the facts and circumstances "that it was negligence to proceed without halting," or looking and listening.

The Supreme Court, in the Williams Case, supra, also approved the following:

"In the majority of cases, however, the question is one of fact, or a mixed question of law and fact, rather than a pure question of law."

What was said in the original opinion in no way conflicts with the utterances of the court in the Williams Case. It was there held that where the plaintiff knew his surroundings, the location of the railroad spur track, its uses, his proximity thereto, and that obstructions prevented his seeing the moving of the train thereon, and that the noise of the mill on either side of the track would drown the noise of the approaching train, yet walked out on the track without stopping to look or listen at a point where he could see the cars approaching, before stepping onto the track, he was guilty of contributory negligence, as a matter of law. This application of the doctrine involved a finding of fact resulting from the customary or frequent use, from which the inference of negligence necessarily followed. As we have said in this case:

"From the circumstances disclosed by the evidence in this record, the inference of negligence does not necessarily arise from the failure of the plaintiff to stop and look and listen, or stop or look or listen. On the contrary, the evidence clearly shows that one could ordinarily cross the track in question along Randolph street without an element of danger from trains, and the question as to whether the plaintiff was guilty of negligence proximately contributing to the injury of which he complains was for the jury."

These conclusions are fully sustained by the ruling in the case of Mynning, Adm'r, v. Detroit, L. & N. R. R. Co., 59 Mich. 257, 26 N. W. 514, cited in L. & N. v. Williams, 172 Ala. 579, 55 South. 218. The Michigan case does not hold, as counsel for appellant seems to think, that it is the duty of the traveler in all cases to "stop, look, and listen," but merely holds that a railroad track, whether it be the main line or a side track, where "the testimony tended to show that this siding was used more or less every day, and that the intestate knew that fact, and was familiar with the crossing, and had been for many years passing at the point daily," is itself a warning of danger, and that one who attempts to cross in the exercise of ordinary care must take notice of this fact.

We adhere to the conclusion that the law of the case was clearly stated in the oral charge of the court, and that there is no error in the record. The application is therefore overruled.

Application overruled.