## Bucklin, Appellant, *v.* Davidson.

*Nonsuit—Evidence.*

In testing the correctness of a refusal to take off a judgment of nonsuit, the plaintiff is entitled to the benefit of every fact and inference of fact which might have been found by the jury or drawn by them from the testimony before them; and it is immaterial that the evidence tending to sustain plaintiff's claim may be very slight, provided that it amounts to more than a mere scintilla. If there is any evidence which alone would justify an inference of the disputed facts on which his right to recover depends, it must be submitted to the jury.

*Contract—Breach of contract—Evidence.*

In an action to recover damages for a breach of contract, there was evidence that the contract, which was in parol, was for the sale of timber to plaintiff, including the use of defendant's sawmill with which to manufacture the timber into lumber. The consideration to be paid for the timber was a certain sum per thousand feet for each kind of wood, and fifty cents per thousand feet of lumber manufactured from the timber for the use of the mill. Plaintiff was given possession as far as practicable of the mill and timber. Subsequently, however, through the agency of his brother and by artifice or trick, defendant obtained possession of the mill and refused to surrender it to plaintiff, and otherwise interfered with plaintiff's prosecution of the work under the contract. Plaintiff exercised forbearance for a time, and continued to stock the mill and receive lumber from it while it was being operated by defendant's brother. There was some evidence that plaintiff, relying on his control of the mill, had undertaken to fill orders for lumber. There was also evidence of a considerable advance in the price of timber very soon after the contract was made. *Held*, that the evidence was sufficient to carry the case to the jury, not only on the question of contract, but also as to breach thereof, and consequent damages.

Argued May 1, 1893. Appeal, No. 208, Jan. T., 1893, by plaintiff, W. D. Bucklin, from judgment of C. P. Warren Co., Dec. T., 1890, No. 33, refusing to take off nonsuit in suit against A. Davidson. Before STERRETT, C. J., WILLIAMS, McCOLLUM, DEAN and THOMPSON, JJ.

Assumpsit for breach of parol contract for sale of timber.

At the trial, before NOYES, P. J., there was evidence that defendant agreed to sell to plaintiff a large amount of timber, and that plaintiff was to have the use of defendant's mill to convert the timber into lumber.

As to the terms of the contract, plaintiff testified as follows : " Q. Now state what contract you made there in that store with Samuel Davidson ? A. I made a bargain with him that evening for all the lumber on the tract. Q. Go on and state the terms? A. I was to pay him 75 cents a thousand for the hemlock, and for the use of the mill I was to pay him 50 cents ; was to pay as produced. Q. What measure ? A. Log measure there at the mill. Q. You say the hemlock was to be 75 cents? A. Yes. Q. What were the other timbers to be? A. Four dollars for the pine and oak, and ten dollars for the cherry. Q. Anything said about the hard woods? A. Not the other hard woods. Q. Hemlock 75 cents? A. Yes sir. Q. Pine and oak $4.00, and cherry how much ? A. $10.00, on the stump. Q. What about the mill, the repairs on it? A. I was to take the mill as it was and be at the expense of repairing it up ; and pay him his royalty in the logs. Q. How were you to pay that royalty, at what price ? A. I was to pay it as produced, as it came out of the business after marketing the lumber. Q. How were you to take this off, how soon? A. I was to go right on, follow it up till I got through."

Plaintiff testified as to the circumstances of the breach of the contract as follows : " Q. Go on and state how you came to quit the job—how that occurred ? A. He got possession of the mill. Q. Who got possession of the mill? A. Davidson. The Court: What year was it when you quit? A. '87. Q. State how they got possession of the mill ? A. Sam Davidson claimed he wanted to saw out a certain long bill of timber. Q. Go on and state what you done about the mill ? A. It was shortly after we got the mill repaired up, Mr. Conklin had the job of sawing, and I let him go on to saw this bill that he wanted to saw. Q. What did they do about the mill? A. Then he kept on sawing after that. Q. He sawed this bill, you say ? A. He sawed this bill and kept on sawing. Q. State what you done to try to get possession of the mill ? A. I kept on stocking, supposing he would give me the mill back ; kept on stocking

just as I had done.   I spoke to Addison Davidson about it and he told me that Sam had one of his freaks on and he would give me the mill back.   Q. When did you see Addison ?   A. At the mill there, after he had come on.   Q. He said Sam had one of his freaks on and would give you the mill back ?   A. Yes, sir.   Q. After they had got this bill sawed ?   A. That was after they got the bill sawed.   Q. Did you see Davidson after that about the mill ?   A. I took Conklin over there some little time after that, expecting to get the mill back, but Mr. Davidson wouldn't let me have the mill.   Q. Was Davidson there ? A. Yes ; he claimed that he could saw the lumber just as cheap as Conklin.   Q. And he would not let you have the mill ? A. No, sir.   Q. As I understand it, you had been stocking during the time, after they commenced on it ?   A. Yes, sir, and I kept stocking afterwards, too.   Q. Did you stock after they refused to give you up the mill ?   A. Yes, sir.   Q. This last time ?   A. Yes, sir ; I had some big orders on hand to fill, and kept stocking, expecting that I would get them filled. Q. Did you ever get possession of the mill after that ?   A. I never did."

Plaintiff further testified that he had spent about $100 in repairs to the mill.   Plaintiff also testified that he stocked and sawed some 400,000 feet of lumber, and that he got pay for only about half of this ; that defendant got the balance.   Another witness testified that he bought the timber from defendant in 1888, giving the amount he took off and its value.

The court entered a compulsory nonsuit, and subsequently refused to take it off in the following opinion by NOYES, P. J.:

" This suit was brought to recover for the breach of a parol contract for the sale of a large quantity of timber and the use of a sawmill.   The plaintiff's evidence was sufficient to require a submission to the jury of the question whether such a contract was made, but we were of opinion that it did not establish any such breach and resultant damages as entitled plaintiff to recover.

" Under the plaintiff's evidence the contract was executed so far as the defendant was concerned.   Possession of the mill and of the timber, so far as that was possible, was delivered. But the plaintiff permitted Samuel Davidson, who was defend-

ant's agent, to run the mill temporarily, and it was alleged that he refused to give it up.　That he did so, claiming that he could do the sawing as cheaply as anyone for the plaintiff, is proved, but the plaintiff's evidence on cross-examination proved, also, that he acquiesced in this and went on with the job, leaving Samuel to do his sawing.　There was no complaint of the manner in which the sawing was done, nor any evidence that any positive and imperative demand for possession of the mill was ever made and persisted in.　The plaintiff's own testimony shows that the job was abandoned for other causes.　These causes, namely, the interference of Samuel Davidson with the operations of the plaintiff's jobbers, were wholly insufficient to establish an eviction from the property, and amount to no more than this, that Samuel assumed to give orders to the men, over whose conduct he had no authority whatever.　They were under no necessity of obeying, and cannot justify an abandonment of the job by showing that such directions were given.

" The testimony of the plaintiff that the defendant had received a part of the proceeds of his lumber was but a scintilla at most.　He gave no time, place, amount or circumstance, and, had it rested as it was left at the conclusion of his examination in chief, would not have required a submission to the jury. But the cross-examination dispelled even this spark, for it clearly appeared that the fact was that part of the lumber had been shipped by the plaintiff to customers from whom the defendant had procured orders at plaintiff's request, and as the plaintiff had not received the pay he assumed, without knowledge, that Davidson had.　It may be the case, and the plaintiff may have a good cause of action upon this account, but it did not appear in the evidence on this trial.　Rule discharged."

*Error assigned* was (2) refusal to take off nonsuit.

*George H. Higgins* of *Allen, Higgins & Allen* and *W. W. Wilbur,* for appellant, cited : Miller v. Beales, 100 Pa. 583 ; Mc-Grann v. R. R., 111 Pa. 171 ; Fisher v. R. R., 131 Pa. 292.

*William E. Rice, W. H. S. Thomson* and *Watson D. Hinckley* with him, for appellee, cited : Lentz v. Choteau, 42 Pa. 435.

OPINION BY MR. CHIEF JUSTICE STERRETT, May 15, 1893:

In form as well as substance, the averments contained in plaintiff's statement of claim present a good cause of action. On the motion to take off the nonsuit the only question was whether his evidence was sufficient to have justified the court in submitting the case to the jury.

In his opinion discharging the rule to show cause the learned president of the common pleas concedes that plaintiff's evidence was sufficient to require submission to the jury of the question whether a contract, such as that averred in the statement, was made, but he says it did not establish any such breach of said contract and resultant damages as would have entitled plaintiff to recover; and hence he refused to take off the nonsuit.

An examination of the testimony has satisfied us that the learned judge was clearly right as to the sufficiency of the evidence to carry the case to the jury on the question of the alleged contract; but we think he erred in holding " that it did not establish any such breach and resultant damages as entitled plaintiff to recover."

We have repeatedly held that, in testing the correctness of a refusal to take off a judgment of nonsuit, the plaintiff is entitled to the benefit of every fact and inference of fact which might have been found by the jury or drawn by them from the testimony before them; and it is immaterial that the evidence tending to sustain plaintiff's claim may be very slight, provided it amounts to more than a mere scintilla. If there is any evidence which alone would justify an inference of the disputed facts on which his right to recover depends, it must, according to the well settled rule, be submitted to the jury. It is their exclusive province to pass upon the credibility of the witnesses, weigh the evidence and ascertain the facts: Lerch v. Bard, 153 Pa. 573, and authorities there cited; to which may be added, Miller v. Bealer, 100 Pa. 583, and Fisher v. Railway Co., 131 Pa. 292.

In view of the fact that the case will go back for retrial, it is not our purpose, nor would it be proper, to specially comment on the force and effect of the testimony further than to indicate that it is sufficient to have carried the case to the jury on the question of breach of the contract, consequent damages, etc., and suggest some of the material facts which it tends to prove.

The evidence shows that the parol contract, for sale of the timber, included the use of defendant's sawmill, then on the premises, with which to manufacture the timber into lumber. The consideration to be paid for the timber, as it was manufactured and marketed by defendant, was a certain sum per thousand feet board measure, for each kind of wood,—hemlock, oak, cherry, etc.,—and fifty cents per thousand feet of lumber, manufactured from the timber, for the use of the mill. The different provisions of the agreement are so connected with and mutually dependent on each other as to constitute an entire contract. It also shows that, so far as the defendant was concerned, the contract was executed by giving plaintiff possession, as far as practicable, of the mill and timber; but it also tends to show that, through the agency of his brother Samuel, defendant shortly afterwards obtained possession of the mill, by a sort of artifice or trick, and refused to surrender the possession and control of the same again to plaintiff, and otherwise interfered with his prosecution of the work under the contract. That—if found to be the fact—would be a breach of the contract, and plaintiff would be entitled to recover at least nominal damages. It is true, he appears to have continued for some time to stock the mill operated by defendant's brother and receive lumber from the same; but all that may be satisfactorily accounted for on the theory that it was the best he could do, in the circumstances. There was some evidence that, relying on having possession and control of the mill, he had undertaken to fill orders for lumber, etc. Assuming that plaintiff did exercise considerable forbearance and submit for a time to defendant's unreasonable refusal to surrender possession of the mill, that indulgence should not deprive him of his right of action for breach of the contract.

There is some evidence of considerable advance in the price of the timber very soon after the contract was made. It is not impossible that this may have had something to do with defendant's conduct in withholding possession of the mill, and otherwise interfering with plaintiff's prosecution of the work under the contract. These, and other matters that might be suggested, may not be improper subjects of inquiry, by the jury, in determining whether there was a breach of the contract or not, and, if so, to what extent plaintiff was damaged. The

burden of proof is of course on him, but we think the evidence adduced was sufficient to carry the case to the jury, not only on the question of contract, but also as to breach thereof and consequent damages.

The evidence on the subject of damages is very slight, but it amounts to more than a scintilla.

Without further comment, it is sufficient to say, we think there was error in refusing to take off the judgment of nonsuit.

Judgment reversed and a procedendo awarded.