# Rees, Appellants, *v.* Joseph Walton & Company, Incorporated.

*Negligence—Collision between boats—Speed—Contributory negligence.*

In an action to recover damages for injuries to a steamer caused by a collision with another steamer, it is error for the court to enter a nonsuit on the ground that plaintiff's steamer was guilty of contributory negligence in running at too high a rate of speed in a fog, where the evidence for the plaintiff tended to show that the rate of speed was slow, and that the plaintiff's steamer was actually backing at the moment she was struck by the defendant's steamer.

Argued Oct. 28, 1902. Appeal, No. 28, Oct. T., 1902, by plaintiffs, from order of C. P. No. 2, Allegheny Co., Jan. T., 1900, No. 441, refusing to take off nonsuit in case of Thomas M. Rees and Frances K. Hulings v. Joseph Walton & Company, Incorporated. Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Trespass to recover damages for injuries to a steamer in a collision.

The facts appear by the opinion of the Supreme Court.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was in refusing to take off nonsuit.

*M. W. Acheson, Jr.*, with him *Thomas Patterson* and *James R. Sterrett*, for appellants.—A scrutiny of the testimony fails to show that plaintiffs' boat was proceeding at a negligent speed. On the contrary the testimony justified a finding that she was going at the slowest possible speed consistent with good navigation. It will be noted, that a steamboat must have some momentum of her own to give her steerageway. This is not only a fact of common knowledge, but the courts have specially recognized it: The Luray, 24 Fed. Repr. 751.

The absence of contributory negligence is of course to be presumed, unless such negligence affirmatively appears: Bradwell v. Pittsburg, etc., Ry. Co., 139 Pa. 404.

Clearly, as it seems to us, the learned judge in his trial of this case usurped the functions of the jury by undertaking to draw inferences of fact from the evidence. That this *is* the province of the jury cannot, of course, be successfully gainsaid: Fisher v. Monongahela Railway Co., 131 Pa. 292, 297 ; Kroesen v. New Castle Elec. St. Ry. Co., 198 Pa. 26 ; Holmes v. Watson, 29 Pa. 457.

*John S. Wendt*, with him *D. T. Watson, Johns McCleave* and *John M. Freeman*, for appellee.—The burden of proof is upon a vessel guilty of a breach of any statutory rule or requirement as to navigation, to show not only that her fault did not contribute to the disaster, but that it could not have done so: The Pennsylvania, 19 Wallace, 125; The Martello, 153 U. S. 64 (14 Sup. Ct. Repr. 723).

The excessive and immoderate speed of the Fisher appears beyond any reasonable doubt from the evidence: The Nacoochee, 137 U. S. 330 (11 Sup. Ct. Repr. 122) ; The Martello, 153 U. S. 64 (14 Sup. Ct. Repr. 723) ; The Patria, 92 Fed. Repr. 411 ; The Catalonia, 43 Fed. Repr. 396 ; Hardy v. The Raleigh, 41 Fed. Repr. 527 ; The Alberta, 23 Fed. Repr. 807.

Opinion by Mr. Justice Dean, January 5, 1903 :

The plaintiffs owned the steamer John K. Fisher, the defendants the Coal City.   Both navigated the Monongahela river on the night of January 6, 1899.   The Fisher had been towing on the river, but on the day named her tow had been tied up and her work ended.   She then steamed down stream intending to round the point into the Allegeheny river and proceed to her landing on the north side.   In her course down the Monongahela she took the Pittsburg side.   The Coal City was coming up the Ohio bound for her landing which was on the south side of the Monongahela, when as she was rounding the point she struck the Fisher amidships and seriously damaged her.   The plaintiff alleged the collision was caused by the negligence of the Coal City, in that, although out of her course she sounded no signals and ran on at full speed; displayed no lights on her smokestack as the law required.   On the other hand plaintiffs averred that the Fisher acted with proper care under the circumstances; it being a very foggy night she ran very slowly; when the Coal City came within sight she reversed her engines and was actually backing away when the collision occurred; that she displayed the statutory light and sounded fog signals; that as she approached the Point she sounded a whistle which could be heard far down the Ohio river below the approaching Coal City.

After the evidence was all in the learned judge of the court below, being of opinion, that it showed contributory negligence on the part of the Fisher, directed a nonsuit, which he afterwards, on motion refused to take off, and we have this appeal by plaintiffs.   In his opinion refusing to take off the nonsuit, he bases the charge of contributory negligence on one fact, that under the circumstances the Fisher was steaming at too great speed.   He says: " Taking plaintiffs' own account of the character of the weather, the fact as testified to by the master and pilot, that he could see not over three hundred feet and that frequently the smoke and fog were so thick that he could not see even that distance, which is fully borne out by the fact that he did not see the lights on defendants' boat at all until the collision took place, it seems plain that a speed of nine miles an hour was an immoderate speed.   As we understand the cases which have been presented to us, they hold

that in fog or thick weather, it is negligence for a boat to proceed at such speed as to make it impossible to stop its headway and bring it to a standstill within the distance at which another vessel could be seen ; and the testimony fully disclosed that at the speed of nine miles an hour or anything approaching it, it would have been impossible to stop the boat within seeing distance of another boat at the place of collision." It will be seen from this, that the court undertook to decide from the evidence, that plaintiff's boat, under the circumstances, was moving at an immoderate speed at the time of the collision and was therefore guilty of contributory negligence, and the learned judge was right in so deciding if the evidence clearly disclosed such negligence. But appellant argues that the evidence does not so show. Captain E. J. Hulings testifies, that he has followed steam boating for seventeen years and is a pilot; that on the day of the collision he started with the Fisher to go around to her landing on the Allegheny at the foot of 5th street; that it was a bad night, very foggy; that he sounded fog signals and kept to the Pittsburg side of the river ; that he ran under slow bells which is as slow as a boat can go under steam and is the slowest a boat can go, unless stopped and allowed to float and that speed continued until the collision ; that at the time he had out the regular signal lights ; that above the Point he sounded signals for it, a kind of signal which would be recognized by river men; that when he saw the Coal City approaching, he stopped his boat and rang to back her and while backing, the Coal City struck the Fisher; he further states, that on a slow bell a boat runs five or six miles an hour; that he could not have entirely stopped his boat and backed her after seeing the other boat. Dailey the engineer testified, the boat was running at a slow bell and was actually backing at the moment of collision. There was other testimony to the same effect.

To our minds, the evidence does not show clearly what the speed of the Fisher was per hour just before the collision ; it does seem to show, at least inferentially, that it was going very slowly because of the dangerous navigation that night. From the testimony of boatmen of knowledge and experience, it would seem, that a boat running in a fog under the most care-

ful navigation, cannot go so slowly, as to lose what is called steerageway, without becoming unmanageable.

It seems to us, while it may be a fact, that the rate of speed of the Fisher was negligent, nevertheless, that is an inference from the evidence, that a jury might not have drawn, or might reasonably have drawn a different one; therefore, as is said in Bucklin v. Davidson, 155 Pa. 362, " the plaintiff is entitled to the benefit of every fact and inference of fact which might have been found by the jury or drawn by them from the testimony before them. "

The judgment is reversed and a procedendo awarded.