Gulf, Colorado & Santa Fe Railway Company v. J. W. Shelton.

Decided June 18, 1902.

1.—Railway—Negligence—Facts.

Facts attending the injury of plaintiff in getting off a moving car considered, and held to sustain a finding of negligence by the defendant railway in improper lighting and construction of platform, in directing plaintiff to leave moving train knowing the danger, in failure to stop to permit him to alight, and in failure to inform him that other cars of the train went through without change being necessary.

2.—Passenger—Termination of Carrier's Relation.

It would seem that one remaining asleep on a car on arrival at a connection where it was set out, and not hearing notice to leave the car nor being informed that it was to be set out, while other cars went through, had not lost his status as a passenger.

3.—Same—Negligence After Termination of Rights as Passenger.

Though the relation of passenger and carrier should be held to be ended on the arrival at a terminus and connecting line and notice and opportunity to leave the car, a passenger remaining asleep on the car was not a trespasser, and the railway was liable for want of ordinary care by its servants to avoid injuring him after discovering that he was still on the car. Instructions ignoring this issue or relieving it from liability because the relation had terminated were properly refused.

4.—Railway Switchman—Apparent Authority—Contributory Negligence.

A passenger upon a car which has been placed in charge of a switching crew on arriving at a station could assume, so far as concerned the question of his contributory negligence, that a switchman, the only employe on the car, who was in apparent charge and directed him to get off it, was acting within his authority.

5.—Contributory Negligence—Getting Off Moving Train.

Evidence considered, and held to justify finding of absence of contributory negligence in plaintiff, who got off a moving car at night, in obedience to the direction of a switchman in apparent control of it, and in ignorance of particular circumstances making the act dangerous.

6.—Damages—Personal Injury—$35,000 Held Not Excessive.

Evidence of injuries to the person, including loss of both legs, considered, and held to support a recovery of $35,000 damages.

7.—Passenger—Duty to Notify as to Proper Car—Charge.

An instruction that it was not the duty of defendant company to notify a passenger of a change of cars, or trains, or which cars went through, and relieving from liability if the change was announced in the car, though not heard, was inapplicable and its refusal not error, where the charge given based plaintiff's right to recover on want of ordinary care after defendant's switchmen discovered plaintiff still asleep in the car after its arrival at the station where it was to be set out.

8.—Same.

A charge that it was not defendant's duty to notify a passenger of change of cars, of what cars went through and what were set out, was inapplicable, where what was said to him by the conductor on that subject was misleading.

9.—Connecting Lines—Switching Service by One Company.

A company which, by arrangement with a connecting road at its terminus, has its switching service there performed by the employes of such other line, is liable for their negligence in performing such service, as for the acts of its own servants. Requested charge presenting a contrary view was properly refused.

10.—Authority of Servant—Charge on Weight of Evidence.

A charge that a railway was not liable for the negligence of a switchman

in charge of and moving its car in telling a passenger, found remaining upon it and asleep, to jump off or he would get left, for want of evidence that such servant was acting within the scope of his authority, was properly refused as being on the weight of evidence.

**11.—Evidence—Failure to Stop Train or Caution Against Getting Off.**

Plaintiff injured in getting off a moving car under direction of a switchman, was properly permitted to testify that no one stopped or offered to stop the train nor cautioned him against alighting.

**12.—Contributory Negligence—Charge.**

See instructions on the burden of proof of contributory negligence held properly given, and others properly refused.

**13.—Invited Error.**

Error in a charge which the complaining party has invited by requesting similar charges is not available for reversal.

**14.—Charge—Assuming Fact.**

An instruction assuming that plaintiff jumped from a moving train and thereby was guilty of contributory negligence, was improper where his testimony was merely that he stepped off, as directed.

**15.—Contributory Negligence—Charge.**

See charge on contributory negligence in getting off moving car held proper.

**16.—Charge—Preparation by Counsel.**

No error is presented by the fact that the charge given by the court was prepared by plaintiff's counsel.

Appeal from Dallas County. Tried below before Hon. Richard Morgan.

*W. H. Clark, J. W. Terry,* and *Alexander & Thompson,* for appellant.—The following assignments, referred to but not copied in the opinion, are taken from their brief:

Twelfth assignment of error: The court erred in refusing to give to the jury defendant's second special instruction, which was as follows: "You are instructed, at the request of the defendant, that the plaintiff has failed to show that said 'railroad man,' whom plaintiff testifies woke him and told him to jump off or he would get left, was acting within the scope of his authority, so as to make defendant liable; and if you believe that said accident resulted from the acts of said railroad man, the defendant not being shown to be liable therefor, you will return a verdict for the defendant." For the reason that said charge properly instructed the jury as to the acts of said railroad man, as disclosed by the evidence, and the general charge did not; furthermore, there was no evidence that said railroad man was acting within the scope of his authority, if the declaration and acts of said railroad man were as testified to by plaintiff and his witness, Farris.

Fourteenth assignment of error: The court erred in refusing to give to the jury defendant's sixth special instruction, which called for a directed verdict for the defendant, on the ground that the contract between plaintiff and defendant had been fully performed by the defendant at the time of the accident, and that after plaintiff had been afforded a reasonable time to alight from the car at Purcell he became a trespasser on the coach, and the accident not having been shown to have

resulted from the willful conduct of the defendant or its employes or representatives, defendant was not liable.

Tenth and sixteenth assignments of error: 10. The court erred in charging the jury as follows: "The burden of proving that plaintiff was guilty of contributory negligence devolves upon defendant."

16. The court erred in refusing to give to the jury defendant's ninth special instruction, which properly instructed the jury with respect to the burden of proof on the question of contributory negligence.

Proposition: Plaintiff's own evidence disclosed his contributory negligence, and the burden of proof should properly have been fixed by the trial court upon the plaintiff.

Thirteenth assignment of error: The court erred in refusing to give to the jury the fourth special instruction requested by the defendant, which was as follows: "You are instructed, at the request of the defendant, as follows: The defendant in this case alleges, that before the train reached Purcell the defendant's conductor woke up plaintiff and informed him that Purcell was the next station, and that he would have to change cars there, that the car he was riding in went no further than Purcell; that thereafter, before the train reached Purcell, which was a period of only about ten minutes, the plaintiff went back to sleep; that the train stopped at Purcell a reasonable length of time for passengers to alight, but that during such time' plaintiff remained asleep, and the uncontroverted evidence showing these facts, you are instructed that if you find he was guilty of negligence in going back to sleep—but for which the accident would not have occurred—you will return a verdict for the defendant." For the reason that said special charge properly presented the issue of contributory negligence of plaintiff in going to sleep after having been duly awakened and admonished upon the train's approach to Purcell, and of his continuing asleep, which plea of contributory negligence, presented in defendant's answer, and established by plaintiff's own evidence, was completely ignored in the charge given.

Ninth assignment of error: The court erred in charging the jury as follows: "If you believe from the evidence that an ordinarily prudent person would not have attempted to disembark from the train under the circumstances under which plaintiff undertook to do so; or if you believe that an ordinarily prudent person would not have attempted to disembark from the train under the circumstances, and in the manner in which plaintiff attempted to disembark, then the plaintiff, in either event, would be guilty of contributory negligence, and he would not be entitled to recover. But if you believe that an ordinarily prudent person would have attempted to leave the train under the conditions and in the manner that plaintiff is shown to have done, then plaintiff would not be guilty of contributory negligence, and his attempt to leave the train under the circumstances, and in the manner he is shown to have done, would not prevent him from recovering herein."

Proposition: The charge of the court was erroneous, in that it gave the jury no instruction as to the effect of plaintiff's going to sleep and

remaining asleep, and his failure to request that the coach be stopped, or his failure to make any intelligent inquiry, all of which were covered by special instructions tendered by defendant and refused.

Fifteenth assignment of error: The court erred in refusing defendant's special charge number 7, as follows: "The uncontroverted evidence shows that the yard crew at Purcell, who were switching the train at the time plaintiff was injured, were the employes of the Atchison, Topeka & Santa Fe Railway Company. That defendant did not employ them; that the defendant did not pay them their wages; that the defendand did not have the power or authority to discharge them; that at the time of the accident they were engaged in services for the Atchison, Topeka & Santa Fe Railway Company, to wit: preparing to make up the north-bound train of the Atchison, Topeka & Santa Fe Railway Company. That said switch crew in charge of said train at the time of the accident were not the employes of the defendant, but were the employes of the Atchison, Topeka & Santa Fe Railway Company, and that the defendant is not liable for their negligence, if any, in reference to the accident complained of; and you will therefore find a verdict for the defendant."

Nineteenth assignment of error: Defendant complains that the entire charge of the court, as given, was prepared by plaintiff's counsel, in haec verba, and the same was extremely prejudicial to defendant, in that in paragraph 5 in said charge there was submitted to the jury for determination of the existence of negligence vel non on the part of the defendant, from the time defendant's coaches were put in motion by the switch engine at Purcell up to the time of the injury, whereas, in paragraph 6 of the charge, in the consideration of the issue of contributory negligence vel non on the part of the plaintiff, the jury were restricted altogether to the culminating act of plaintiff in getting off of the train, and were not permitted to consider the acts of omission or commission on the part of the plaintiff prior thereto; all of which is fully shown in the evidence adduced on the trial.

FISHER, Chief Justice.—Appellee Shelton sued the appellant for $40,000 damages for personal injuries sustained to himself, and recovered a verdict and judgment in the court below for the sum of $35,000. There is evidence in the record which authorizes this court to find the following facts:

On the night of March 30, 1900, the appellee purchased from the appellant's agent at Gainesville, Texas, a ticket from that point to Los Angeles, Cal., over the appellant's road and its connecting line, the Atchison, Topeka & Santa Fe Railway. In negotiating for the purchase of the ticket the appellee inquired of the agent who sold the same to him whether he would be required to change cars, and was then informed by the agent that there would be no change of cars before arriving at Newton, Kan.

The train upon which the appellee took passage at Gainesville left

that place about 11 o'clock of the night of March 30th, and arrived at Purcell, the place where the injury was inflicted, about 3:20 a. m., at which time it was dark. The train was not due to arrive at Newton, Kan., until about 2:30 p. m., March 31st. Appellee boarded the train at Gainesville and went into one of the coaches, and while there the conductor, in taking up his ticket, informed the appellee that he would be required to change cars at Purcell; whereupon appellee told the conductor that the agent at Gainesville who had sold him the ticket assured him that he would not be required to change cars until his arrival at Newton, Kan. In response the conductor told him that he must change cars at Purcell. The train upon which the appellee was then riding was composed of some coaches which were left out at Purcell, one of which was the coach occupied by appellee as a passenger; but there were two other coaches which were not set out there but went on through to Newton, Kan. The appellee was not informed of this fact by the conductor, nor did he know that these two coaches would continue on to Newton, Kan.; and the inference is warranted from the evidence that if the conductor had not instructed appellee to change cars at Purcell, and had correctly informed him that there were two coaches as a part of his train which would continue to Newton, Kan., the appellee could and would have gone into one of those coaches, and not made an effort to disembark at Purcell.

Immediately, or a few minutes after the arrival of the train at Purcell, a switch engine coupled on to the same, and under the direction of a switch crew, which was then and there in the control and management thereof, was put in motion by the switch engine, and when going at the rate of about two and one-half miles an hour, and when the coach in which the appellee was riding had gone the distance of about fifty feet, the appellee was instructed to leave the coach and the train by one Petrie, a member of the switch crew. That in obedience to this request and command, he undertook to alight from the moving train, and when doing so, stepped or fell between the lower step of the coach and the edge of the platform, whereupon the wheels of the car passed over his legs, and they were both so injured as required their amputation.

When the train arrived at Purcell the appellee was asleep, and did not hear the name of the station announced, if it was announced; but immediately, or in a few minutes after arriving there, he was awakened by the request or command to leave the train, and in obedience to this command, as before stated, he undertook to alight from the train. He was not at the time informed, nor did he know that there were two coaches attached to the train that would continue on to Newton, Kan., in which he could and doubtless would have gone, if he had received this information at that time, and would not have made the effort to disembark. No effort was made to stop the train in order that he might leave it with safety; nor was he informed of the condition of the platform and the space between the edge of the same and the lower steps of the car. The platform at the time was poorly lighted, and the infer-

ence to be drawn from the facts is that at the time the appellee attempted to leave the train he was in the exercise of proper care and was not guilty of contributory negligence.

The train, at the time it was being backed and at the time that the appellee was instructed to alight, was in charge of a switch crew of which Petrie was a member. There is no direct and positive testimony to the effect that Petrie was the party that instructed or commanded the appellee to leave the train, but the evidence upon this subject authorizes the conclusion that he was the party that gave the command. The switch crew that had control of the train was in the employ of the Atchison, Topeka & Santa Fe Railway Company, but the evidence is clear, convincing, and beyond dispute to the effect that the servants of that company, under an arrangement with the appellant's road, performed the duties of a switch crew for the latter company. It was a part of the duty of the switch crew, when appellant's train arrived at Purcell, to take control of the same and to remove it and switch it back in the manner done in this instance.

The appellee was a stranger to the location and situation of the platform at Purcell, and did not know of the existence of the space between the edge of the platform and the lower steps of the car. If the platform had been sufficiently lighted, the appellee could and probably would have discovered the space before alighting, and thereby have avoided it and the injuries sustained by him.

The conclusion is also warranted that Petrie had the authority to stop the movement of the train in order to permit the appellee to alight with safety, and if he had done this, the appellee would have avoided the injury. The conclusion is also warranted that if the conductor in charge of the train before it reached Purcell, or the switch crew after it reached that place, had informed appellee that there were coaches which were a part of the train that would go through to Newton, Kan., the appellee could and doubtless would have gone into one of those coaches, and thereby have avoided the injury. The space between the lower step of the coach and the edge of the platform was about twelve or thirteen inches.

The conclusion that we reach from the facts as stated is that the appellant was guilty of negligence in the following particulars, each or all of which may have been and doubtless was, the proximate cause of his injuries:

1. In not having the platform sufficiently lighted.

2. In maintaining the platform with the wide space between it and the lower steps of the car.

3. In directing and commanding the appellee to leave the moving train, with knowledge upon the part of Petrie that the platform was insufficiently lighted, and of the existence of the space between it and the lower steps of the car.

4. The failure of Petrie to stop the train under the circumstances, in order to permit the appellee to alight with safety.

5. The failure of the conductor in charge of the train and of the switch crew to inform and notify appellee that there were coaches attached to the train which would continue beyond Purcell.

We also find, in view of the facts which will be hereinafter stated, that the verdict and judgment are not excessive.

Upon the principal questions involved in this case, the trial court gave the following instruction:

"In determining the question of liability of the defendant in this case, you will confine yourselves to a consideration of the following questions, to wit:

"1. Did the defendant, by and through its servants, discover the presence of the plaintiff in one of the defendant's coaches after the same had been put in motion by the switch engine at Purcell?

"2. If the defendant did so discover the presence of the plaintiff, then did the defendant thereafter exercise ordinary care to avoid injuring him?

"3. Did the failure of the defendant, if any, to exercise ordinary care to avoid injuring the plaintiff directly and immediately result in the injuries sustained by the plaintiff?

"4. Was the plaintiff guilty of contributory negligence?"

The charge defines ordinary care, and then proceeds as follows: "If from the evidence you believe that after the defendant's coaches were put in motion by the switch engine at Purcell, the defendant, by and through any of its servants to whom it had intrusted the duty and authority of directing and controlling the movements of its train while the same was being switched, discovered the presence of the plaintiff in one of said coaches while being so moved by the switch engine, and having so discovered the plaintiff therein, if such was the fact, failed to exercise ordinary care with reference to his safety, and that such failure, if any, to exercise ordinary care directly and immediately resulted in the injuries sustained by the plaintiff, then you will find for the plaintiff, unless you believe that he was guilty of contributory negligence, as hereinafter defined." The court then proceeds to submit the issue of contributory negligence, and the rule to govern the jury in determining the question of damages.

It is apparent from the charge that the liability of the appellant was submitted upon the theory that the appellee had in a measure ceased to be a passenger, and that it could only be held responsible for the exercise of ordinary care in its conduct towards him. If it be conceded that the appellee had ceased to be a passenger by remaining in the coach after the train had arrived at its destination, it is clear that he could not be regarded in law as a trespasser, for he was rightfully on the train although in the wrong coach; and consequently, the least that may be said of the degree of duty owing by appellant in its conduct towards appellee was that of ordinary care looking towards his safety, and to prevent injuring him after his situation was discovered. In a case where such duty exists, the failure to use ordinary care resulting

in damages, an action for negligent injury may be maintained and a recovery had for all of the consequences of which such failure was the proximate cause. The jury in passing upon and determining the question whether or not the appellant had exercised ordinary care after discovering the plaintiff in the car, doubtless concluded that the facts introduced upon the trial, and as set out in our findings, were sufficient to indicate that the appellant had been guilty of negligence in the manner as stated in the findings of fact. In submitting the degree of care or duty resting upon appellant in its conduct toward appellee, the charge of the court was very conservative, for the facts in the record strongly indicate that the appellee, at the time he received his injuries, had not lost his status as a passenger; and if such was the case, of course the appellant was burdened with a higher degree of care in its conduct towards him than ordinary care.

There is evidence in the record that immediately upon the arrival of the train at Purcell, or a very few minutes thereafter, it was put in motion under the direction of the switch crew, and that there were coaches attached to that train in which the appellee was entitled to ride, if he had been promptly notified of their existence. It might be true that he was given a reasonable opportunity to leave the particular coach that he was occupying, but in view of his right of continuous transportation, he was not required to leave the train, and had the right to ride in one of the coaches that was going through to Newton, Kan. The facts and circumstances indicating that he was entitled to protection as a passenger are much stronger in his favor than were the facts in the case of Texas Pacific Railway v. Dick, 63 Southwestern Reporter, where, after a review of authorities, it was held that one who had left the train and the depot platform was entitled to protection as a passenger. Our information is that a writ of error was denied by the Supreme Court in that case.

It is insisted that the servant of appellant who gave the command or instruction to the plaintiff to leave the train was wanting in power to exercise such authority, and therefore his conduct in the attempted exercise of authority in this respect could not affect the rights of appellant. There is evidence in the record to the effect that the switch crew was under the control of one Peters; but the evidence is also to the effect that the train at the time that the command was given was in control of the switch crew, and Petrie, the party who gave the command or instruction to appellee to leave the train, was at the time apparently exercising control over the train, and was the only member of the switch crew present who had the apparent authority to exercise any power in the premises, and there is evidence in the record which has a tendency to show that he was the only member of the switch crew that was on the train. He was a part of the force that controlled the movements of the train, and when he found the appellee in the car, and commanded and directed him as to what should be done, the appellee, under the circumstances, had the right to presume that the real power was lodged

in the one who was apparently clothed with the authority to give such directions and commands. Our findings of fact in effect dispose of the issue of contributory negligence, but in view of the fact that it is especially insisted that alighting from the moving train in the dark was contributory negligence, we have concluded to call attention to the reported cases coming from the courts of this State bearing upon this subject. By reason of the rapid speed of a train, or the existence of facts and circumstances at the time that a passenger attempts to board or leave it, the indications of danger may be so apparent and obvious that one must necessarily be charged with knowledge of its existence; and in such a case, the court might conclude, as a matter of law, that it would be contributory negligence to attempt to leave or board the train under the circumstances. But in a case of the character before us, where it is shown by the facts that the train was going at a slow. rate of speed, and where the appellee alighted there was a depot platform, which he had the right to expect was in a reasonably safe condition, and where the disembarkation was at the request of one whom he had the right to believe would not have given the command unless it was safe for him to alight, it can not be said that leaving the train under the circumstances was contributory negligence. Railway v. Bingham, 2 Texas Civ. App., 278; Railway v. Downing, 41 S. W. Rep., 190; Railway v. Brown, 4 Texas Civ. App., 435; Railway v. Dorough, 72 Texas, 108; Mills v. Railway, 59 S. W. Rep., 874; Railway v. Sanchez, 65 S. W. Rep., 893.

It is contended that the verdict is excessive. The facts upon this subject, briefly stated, are as follows: Appellee was 49 years old the day after he was injured. Up to that time he had never been sick a day in his life; had never taken a drink of any kind of intoxicating liquor. He used neither coffee nor tobacco, and had been an active business man all his life, and had made money every year since he left his father. At the time of the injury he was a man of fair means. He was thrown under the wheels of the car and both of his lower limbs were crushed to such an extent as to necessitate amputation of the right leg three inches above and the left one nine inches below the knee. Immediately after the infliction of the injuries he employed physicians at Purcell, but they were unable to perform the operation of a double amputation, and it became necessary for him to be taken to the hospital at Temple, where such an operation could be performed. He was compelled to remain at Purcell twelve hours before starting for Temple, and was then taken to Temple in an old express car and was compelled to employ a physician to accompany him. It required twelve hours more to make the trip from Purcell to Temple. He arrived at Temple twenty-four hours after the infliction of the injuries, and was carried to the hospital at that place, where the physicians said he had no blood and no pulse and could not stand the operation. In order to prepare him to undergo the operation, the physicians at the hospital at Temple were compelled to and did administer hypodermically fourteen and a

half pints of salt solution. This required thirty hours. The operation, therefore, was not commenced, and could not have been commenced, until after the lapse of fifty-four hours from the time of the injuries. The physicians at the hospital, recognizing his extremely precarious condition, sent for both a lawyer and a preacher. He paid Dr. Childs $30 for his services in accompanying him from Purcell to Temple. He paid the consulting physician at Purcell $5. He was compelled to remain in the hospital at Temple sixty days, and his bill there was $465, which, together with the $30 paid Dr. Childs, and the $5 paid the consulting physician at Purcell, aggregated, $500. Appellant admitted that the amounts so expended by appellee were reasonable and necessary. At the time he was injured, some one gave him a drink of whisky; this was the first drink he had ever taken. His ability now to earn money is very poor. He paid $250 for artificial limbs but could not use them, and derived no benefit therefrom. He has no way of getting about, except in his invalid chair. He can not even crawl. He has tried everything to enable him to walk or crawl, but without avail; tried to walk with a peg-leg, but fell. Can not walk with the aid of crutches; falls in the attempt. He has no opportunity whatever of exercising, and in consequence weighs fifteen to twenty pounds more now than he did before the accident, when he had both of his lower limbs. He is compelled to have and to pay for an attendant to roll him around in his chair; he is compelled to travel in baggage cars; the railways will not permit him to travel otherwise. He is compelled to pay $1 a day for a boy to accompany him, and this doubles his expenses. He is also compelled to pay extra at hotels, because he requires extra service.

He experiences pain in his lower limbs now; frequently he can not sleep a wink because of the pain in the stumps of his legs. Since the injury there is a decided difference in his heart action. It often jumps and he can hear it beating. Its action is very irregular. He never experienced such condition in his heart action before the injury. From the time when the injury was inflicted to the time of the trial, only about a year, he had lost more than $2000 in his business, because of his inability to get about and attend to it.

Dr. S. D. Thurston testified that amputated limbs for years after the amputation frequently burn, and that the patient experiences painful sensations which affect his ability to sleep and rest, and which render him nervous and restless; that as a rule such pain is permanent. It comes on in paroxysms of a neuralgic character, and sometimes the limb will jerk involuntarily and can not be controlled, and there is no prescribed time when it will cease to hurt.

Again he testified: "Assuming that Shelton is fifteen or twenty pounds heavier now than before the accident, when he had both his limbs, he will continue to increase in corpulency and become very obese. Fat will diffuse itself through all the muscular tissues and particularly around the region of the heart; that weakens the muscular power of

the heart. It is what is called a fatty heart, and has a tendency to shorten life. Exercise is absolutely essential to health. Shelton's inability to exercise is calculated to impair his health and produce obesity. His life was in jeopardy from the time he left Purcell and afterwards. His physical suffering was protracted and proportioned to the length of time and the shock to the nervous system, which was increased by the time it took to transport him from Purcell to Temple. It is very doubtful if it could be arranged to enable him to walk on crutches. If the limbs were of equal length it might be done. It would be very difficult to have an appliance to enable both his limbs to act together, because of want of co-ordination in the motion of his limbs."

In this case, there does not appear to be any abuse of discretion by the jury vested in them in awarding the damages. The record upon this subject is clean; there is an absence of any fact or circumstance indicating that the jury, in reaching a conclusion as to the amount of damages sustained by the plaintiff, were influenced by bias or prejudice, improper motives, or passion; and they were doubtless governed by a purpose and desire to a conscientious discharge of their duty, to the end that the plaintiff should be compensated for the injuries and loss he had sustained, and for the terrible suffering he had endured and will doubtless endure as long as he lives. In determining the amount of compensation for the physical and consequent mental suffering which the plaintiff has experienced, and which he doubtless will endure to the end of his days, there exists no rule of experience which will authorize this court to substitute its judgment for that of the jury; and when this element of damage is considered, in connection with the present monetary loss resulting to plaintiff's business and earning capacity actually sustained, together with his diminished earning capacity so far as relates to the future, and the extra expense that has accrued by reason of his injuries and which will in part continue as long as he lives by reason of his helpless condition, it can not be said that the verdict is excessive.

The appellant's seventeenth assignment of error is as follows: "The court erred in refusing to give to the jury defendant's eleventh special instruction, as follows: 'You are instructed at the request of defendant that it was not the duty of the defendant to personally notify plaintiff of a change of trains or cars, as to what cars went through and beyond Purcell and which did not, and that if defendant's conductor made such announcement in said coach in which plaintiff was riding so that he could have heard the same if he had not been asleep, you will return a verdict for the defendant.'"

Under the instructions of the court to the jury, the question embraced in this charge had ceased to be an issue in the case. The charge of the court limited the jury to a consideration of the condition of things discovered by the appellant after the train had been taken possession of by the switch crew. This instruction ignores the theory of the case presented by the charge of the court, and upon which the verdict of

the jury was evidently predicated. The fact that the plaintiff was asleep when the train arrived at Purcell and did not promptly get off the train when that station was announced did not relieve the appellant from the exercise of at least ordinary care looking towards his safety. This question has been fully considered in passing upon the main questions of the case, as previously discussed. This charge instructs the jury that it was not the duty of the defendant to personally notify the plaintiff of the change of trains or cars, and as to which cars went through or beyond Purcell and which did not. If we could admit that this was a correct statement of the law, we are not prepared to say that it should be unqualifiedly applied in this case, for the reason that it ignores that feature of the case whereby the jury were authorized to draw the conclusion from the statement made by the conductor, that the plaintiff was misled into the belief that a change of cars was necessary at Purcell and none of the coaches went through beyond that point. It may be that the conductor was not required to personally inform plaintiff of the change of trains or cars or which went through or beyond that station; but it is clear that if, by his words or conduct, he misleads or misinforms or deceives a passenger upon this subject, he is guilty of a breach of duty for which his principal might be held responsible. There was no error in refusing this charge.

The court instructed the jury that as the defendant intrusted the matter of switching its coaches at Purcell to the yard crew in the employ of the Atchison, Topeka & Santa Fe Railway Company, they, in the performance of that duty, became and were, as to the plaintiff herein, the servants of the defendant. This charge is complained of in appellant's seventh assignment of error. There was no error in the court's giving this instruction. There is no conflict in the evidence upon this subject; the yard crew of the Atchison, Topeka & Santa Fe Railway Company did and performed the duties of a switching crew for the appellant at Purcell. Such being the case, the court correctly informed the jury that they must be considered as the servants of appellant.

The eighth assignment of error complains of the main charge of the court, which has been previously stated in this opinion, wherein the court submits the combination of facts that would authorize the plaintiff to recover. What we have said upon this subject indicates our opinion as to the propriety of this instruction. The court properly gave it.

The charge requested, as set out in appellant's twelfth assignment of error, which the court refused to give, is upon the weight of evidence and was properly refused.

The evidence complained of in the eighteenth assignment of error was admissible. The plaintiff Shelton testified that after the coaches were put in motion, and after the railroad man came in with a lantern, no one stopped or offered to stop the train to let him off, and no one cautioned him not to undertake to alight from the train. He testified:

"When the railroad man told me to get off at Purcell, I did not ask him to stop the train; I never asked anybody to stop the train; I never asked anybody whether it was dangerous to do so or not,—I did not have time."

The evidence in the record clearly shows that when the train crew quitted the train at Purcell the switchmen took charge of the same, and did whatever they thought proper or necessary to be done in the movement and switching of the train; and the evidence authorizes the conclusion that the only member of the switch crew who was in the coach with the plaintiff after the train had been put in motion was Petrie, who instructed and directed the plaintiff to leave the train. There was no other servant of the appellant there at the time who was in a position to see the situation of the plaintiff, and who was in a position to exercise ordinary care looking towards the safety of the plaintiff and to exercise a like care to avoid injuring him. When the question was asked, did anyone stop or offer to stop the train to let the plaintiff off, or caution him not to undertake to alight from the train? it was proper for the plaintiff to answer that no such caution had been given, nor offer made to stop the train. The jury in considering these questions and the answers given to them must certainly have construed them to mean that no such warning was given nor offer to stop the train was made by Petrie, who was then the only servant of the appellant present. This evidence was admissible upon the ground that the plaintiff was not cautioned as to the existence of the danger from alighting from the train, and also for the purpose of negativing the fact that he knew of such danger. If the plaintiff after he had been instructed to leave the train, had been cautioned not to alight from it while moving, and that the train would be stopped so that he could leave it, it would have had an important bearing upon the question whether he was guilty of contributory negligence. In view of the evidence, the jury having the right to consider that alighting from the moving train under the circumstances was dangerous, and also that that fact was not known to the plaintiff, it was important for them to determine whether Petrie, the servant of appellant, was remiss in his duty in not cautioning the plaintiff as to such danger and in not offering to stop the train. The evidence had some bearing upon these questions.

In view of the facts as found by this court, the court properly refused the instruction set out under appellant's fourteenth assignment of error.

There was no error in the charge of the court on the subject of contributory negligence, as complained of in the tenth assignment of error; nor did the court err in refusing the charge complained of in the sixteenth assignment of error.

The charge of the court upon the burden of proof concerning contributory negligence was correct, but if this were not the case, it appears that this instruction was invited by one to the same effect re-

quested by the defendant. Such being the case, appellant can not complain.

The charge complained of in the sixteenth assignment of error is as follows: "You are instructed at the request of the defendant, that while the burden is on the defendant to prove its defense of contributory negligence, that if it appears from the plaintiff's own evidence that in going back to sleep after being awakened and notified that Purcell was the next station, or that in jumping from the moving train in the dark, when he could not see where he was jumping, he did not exercise the care and prudence that a person of ordinary and reasonable care would exercise under like circumstances, you will return a verdict for the defendant." This requested instruction is erroneous for several reasons:

1. Because it assumes that as the plaintiff went back to sleep after once being awakened before he reached Purcell, he was guilty of contributory negligence. It is true that he was awakened and notified that Purcell was the next station, and thereafter he went to sleep and was asleep when the train reached Purcell; but this fact had little if anything to do with the real cause of the accident; and instructing the jury that if he went back to sleep he would be guilty of contributory negligence and could not recover, ignores entirely that theory of the case submitted by the charge of the court,—that is, the failure of the servants of appellant to exercise ordinary care in their conduct towards the plaintiff, after he was discovered in the coach by the switch crew.

2. It assumes that the plaintiff jumped from the moving train. The plaintiff's testimony upon this subject is as follows: "A railroad man came through the car with a lantern and said, 'Here are some passengers in this car. What are you all doing in here; get out of here or you will get left. Hurry up and get out of here, quick.' I got up and took up my satchel and overcoat, and this old gentleman ahead of me went out, and when I went on the platform it was dark as pitch, and I could not see any platform, and did not know which way the train was moving. I supposed, of course, that the train was moving forward, and I stepped down on the last step and stepped off, and it proved to be going backwards, and as a matter of course I fell. The next thing I knew the wheels were on my feet and ran over my legs."

Jumping from a moving train in the dark when he could not see where he was jumping might be contributory negligence upon the part of a passenger, in that it evidences a want of ordinary care and prudence in leaving the train; and this is the state of facts assumed by the charge. But if he stepped down on the last step of the car and stepped off, although it might be dark, it could not be conclusively said that such conduct was imprudent and evidenced a want of ordinary care in leaving the train.

There was no error in refusing the charge set out in appellant's thirteenth assignment of error. It was on the weight of evidence, and

what we have in part said in disposing of the sixteenth assignment of error applies here. It was a controverted fact whether the train stopped a reasonable length of time at Purcell for passengers to alight before it was put in motion by the switch crew.

The charge complained of in the ninth assignment of error was proper. Our findings of fact and what we have previously said dispose of the question raised by the fifteenth assignment of error.

There is no merit in the nineteenth assignment of error.

Our findings of fact dispose of the remaining assignments of error. We find no error in the record, and the judgment is affirmed.

*Affirmed.*

Writ of error granted by Supreme Court. Judgment affirmed, 96 Texas, —.·