# Louisville & N. R. R. Co. *v.* Williams.

## *Injury to Person on Track.*

(Decided June 17, 1913.    Rehearing denied June 30, 1913.
62 South. 679.)

1. *Evidence; Conclusion.*—Whether a person does or does not know a particular fact is a mere conclusion, and a witness should not be permitted to state whether another person does or does not know a fact.

2. *Same.*—Where a witness was in a position to observe, he may be able to state that another person present saw certain conditions which were visible; hence, where a party was injured in crossing a spur track of defendant railroad a witness may state that the conductor in charge of the train saw persons crossing and recrossing the tracks, as such is a collective statement of fact and not a conclusion.

3. *Trial; Reception of Evidence; Objection.*—Where plaintiff was run down on the spur track, and a witness had answered in the affirmative, the question whether the conductor had been in upon the spur track before the day of the accident, and that he knew how many people crossed there, the refusal of the trial court, on motion to exclude the entire answer on the ground that it was irrelevant was proper as the objection should have pointed out the erroneous part, the gratuitous statement of the witness's conclusion as to the knowledge of the conductor.

4. *Appeal and Error; Harmless; Evidence.*—Where a witness has stated the facts upon which his conclusions are based, to allow the witness to testify as to whether another person did or did not know certain facts, will not necessitate a reversal, although error.

5. *Railroads; Persons on Track; Injury; Complaint.*—A complaint against a railroad company for injuries received by a person in crossing a spur track of defendant railroad company, alleging that defendant's servant in charge of the cars, while acting within the line and scope of his employment willfully or wantonly ran down plaintiff, proximately causing his injuries, sufficiently charges a willful or wanton injury.

6. *Same; Evidence.*—Where plaintiff was the servant of a lumber company, which had a spur track running through its yards, and was struck and injured by cars shunted down the track, evidence that cars were not customarily kicked into the spur track, without warning, and that the railroad did not object to the employees of the lumber company crossing the track, was admissible, as the servants of the lumber company were not trespassers, but had a right to cross the tracks upon the premises of their master.

7. *Same.*—Evidence that the servants of the lumber company crossed the tracks at other places than that at which the accident occurred, is admissible in an action against a railroad company for injuries to a servant of the lumber company who was run down by cars

[Louisville & N. R. R. Co. v. Williams.]

shunted upon the private track of the lumber company; the restrictions relating to public crossing not being material.

8. *Same; Duty of Railroad*—Where a lumber company had a private spur track through its yards, and many of its employees continually crossed the tracks in the performance of their master's business, the railroad company operating over such track is bound to exercise a high degree of care and to anticipate their presence on the tracks.

9. *Same; Duty to Maintain Lookout.*—To render a railroad company liable to a plaintiff who was struck by cars shunted by one of its engines upon a private spur track, it is not necessary that the public should have ordinarily used the track, or that the servants of the railroad company should have discovered plaintiff's peril, it being liable for the willful and wanton failure of its servants to take proper precaution.

10. *Same; Negligence.*—While flying switches do not constitute negligence per se, yet if the servants of a railroad company shunted cars without warning upon a spur track of a lumber company over which the servants of the lumber company were constantly passing, and such tracks were so obstructed by lumber that those crossing them could not see approaching cars, the railroad company was guilty of negligence as a matter of law.

11. *Same; Willful or Wanton Injury.*—Where the servants of a railroad company had knowledge of the very frequent presence of the employees of the lumber company on the spur track, and the likelihood that their acts would result in injury, the company is guilty of a willful and wanton wrong, where its servants shunted cars down a private spur track over which servants of a lumber company were constantly passing.

12. *Same; Jury Question.*—Under the evidence in this case, it was a question for the jury whether the acts of defendant's servant was the proximate cause of plaintiff's injury, and also whether defendant's servants were guilty of a willful or wanton wrong.

13. *Same; Instruction.*—Under the facts in this case the refusal of a charge asserting that the cars must have been shoved on the track at a high rate of speed was not reversible error, because the charge is misleading; speed being a relative term, and a speed which would be high under some conditions would be deemed low under others.

14. *Same.*—A railroad company is liable for injuries received owing to the willful and wanton acts of its servants in charge of its train, although its other servants be not guilty of negligence.

15. *Same; Damages.*—Where one is run down and injured by the willful or wanton acts of the servants of defendant, in assessing the damages, the jury may not only award compensation for the injuries, but may award a further reasonable sum as punishment.

16. *Damages; Punitive.*—The facts considered and it is held that the award of $27,000 as compensatory and punitive damages was not so excessive as to denote passion, prejudice or mistake on the part of the jury.

17. *Charge of Court; Covered By Those Given.*—The court will not be put in error for refusing charges substantially covered by written charges given.

APPEAL from Autauga Circuit Court.

Heard before Hon. W. W. PEARSON.

Action by Joseph E. Williams against the Louisville & Nashville Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Plaintiff was an employee of the Marbury Lumber Company, and about 2 p. m., while attempting to cross a spur track running from defendant's main line about 350 yards into the lumber company's premises, between its sawmill and planing mill, and used only in connecwith its business, was run down and seriously injured by a cut of freight cars kicked or pushed by defendant's locomotive or engine from its main track. Plaintiff's evidence tended to show that there were four cars in the cut, that they were moving at the point of collision at a speed of from eight to twelve miles an hour, on a downgrade; that plaintiff was carried along about 100 feet after being hit, and was taken from under the second car after it had stopped; that no warning was given of the approach of the cars, and no one was sent ahead to see that the track was clear; that no one was on the cars at the time of the collision; that the brakeman got on one of the cars after the accident and applied the brake; that previous to this occasion the brakeman or flagman, or the conductor Smith, would always come along and see whether the track was clear and flag the cars in, and on the first trip in that morning the brakeman came down in front of the cars; that it was customary to kick the cars onto the spur; that switching on the spur was customarily done once a day, after which the trainmen would not come back; that on this day they came and switched on the spur in the forenoon, after which they took their train to Mountain Creek, a mile or two away on the main line, and came back after an hour or so and shoved in the cars that struck plaintiff.

The evidence shows without material dispute that the spur track curves considerably from the main track to its terminus at the Marbury Lumber plant; that lumber was piled for a great way on both sides of it about 8 feet high and within 1½ to 3 feet of the rails at the point of collision; that plaintiff and a companion employee had left their work in the planing mill to get more lumber to work on, and had emerged from a narrow passageway between the piled up lumber, immediately upon the track, heedlessly and without stopping, looking, or listening, and was struck by the front car as he got on the track, his companion being simultaneously struck and killed; that the mills were then in operation and making such a noise that the sound of an approaching train, or its warning signals, could not be heard by one at the passageway; that plaintiff did not hear it and was unaware of its approach; and that these general conditions were known to the conductor of the train. Plaintiff's evidence tended to show, also: That the spur track ran through the lumber company's premises where about 150 of its employees were engaged at work. That crossing through its whole extent, where not obstructed, was frequently made by these employees and at all times of the day. That some one was on the track on an average of one every minute. That at the point of collision there was a regular passageway over which plaintiff was passing. That the path was visible, and was the main place of crossing, and that some one was constantly crossing there in connection with the work of the lumber plant—as one witness stated, "every minute in the day." That Smith, the conductor of this train, had been coming in on the spur and switching cars every other day or so for about six weeks. That he had seen numbers of people on the track and had seen them crossing to and fro on the occasion of his visit, and that

he was acquainted with conditions about the spur track and lumber plant.

There was a sharp conflict in the evidence as to the number of cars in the cut, as to the speed at which they were moving, as to the distance they ran after the collision, and as to the presence and position on the cars of the conductor and the negro brakeman before and at the time of the collision. A fuller statement as to the condition of the premises and surroundings and the mode and circumstances of the collision will be found in a report of a former appeal in this case in 172 Ala. 560, 55 South. 218. All counts on simple negligence were eliminated by charges of the court, and the case went to the jury only on the ninth count of the complaint, which was for willful or wanton negligence. The verdict was for the plaintiff for $27,000 damages, and judgment was accordingly entered. The damages shown were that plaintiff's left leg was ground off and amputated about halfway between the knee and the ankle, and the right foot was cut off diagonally from the little toe across the instep to the heel, leaving the little toe on that part of the foot; that plaintiff was in the hospital 5 weeks and was unable to get about or to work for 13 months; that he was earning when injured $1.50 and is now earning only $1 a day; and that he was previously sound in body and of good health.

R. T. GOODWYN, GEORGE W. JONES, J. M. FOSTER, and S. L. FIELDS, for appellant. Henry L. Stone, of counsel. If there was wanton negligence on the part of defendant's servants, such negligence was not the proximate cause of the injury.—*N. C. & St. L. Ry. v. Harris,* 142 Ala. 249; *Bryant v. So. Ry. Co.,* 137 Ala. 488; *Western Ry. of Ala. v. Mutch,* 97 Ala. 194; *Mayer v. Thompson Hutchinson Bldg. Co.,* 116 Ala. 634; *Weatherly v. N.*

*C. & St. L. Ry.,* 166 Ala. 575; *Laidlaw v. Sage,* 158 N. Y.
73, 44 L. R. A. 216; *Wagner v. A. C. L. R. Co.,* 147 N. C.
315; *Miner, et al. v. McNamara, et al.,* 72 Atl. 138; *Leb-
anon L. & I. Tel. Co. v. Lanham Lbr. Co.,* 115 S. W. 824;
*Barkeley v. Mo. Pac. Ry. Co.,* 9 S. W. 793; *Galveston
H. & S. A. Ry. Co. v. Chambers,* 73 Tex. 296; *Berry v.
Sugar Notch,* 43 Atl. 240; *Ring v. Cohes,* 77 N. Y. 83;
*Murgaugh v. New York C. & H. R. R. Co.,* 49 Hun. 456;
1 Thompson on Negligence, sec. 56; 1 Bailey on Per Inj.
(2nd Ed.) sec. 46; *Claypool v. Wigman,* 71 N. E. 509.
The motion for a new trial should have been granted, be-
cause the verdict is contrary to the evidence.—*Bhm.
Ry. L. & P. Co. v. Oden,* 155 Ala. 154; *Bhm. Elec. Ry.
Co. v. Clay,* 108 Ala. 233; *Teague v. Bass,* 131 Ala. 422;
*Bhm. Nat. Bank v. Bradley,* 116 Ala. 142; *Southern Ry.
Co. v. Lollar,* 136 Ala. 376; *Gassenheimer v. Western
Ry. of Ala.,* 57 South. 718. The verdict is excessive and
the motion for a new trial should have been granted.
—*A. G. S. R. R. Co. v. Burgess,* 119 Ala. 555; *So. Ry.
Co. v. Crowder,* 130 Ala. 265; *C. of Ga. Ry. Co. v. Mor-
gan,* 49 South. 865; *Standard Oil Co. v. v. Tierney,* 96
Ky. 89; *Heddles v. Chicago Ry. Co.,* 74 Wis. 239; *Chic-
ago, etc., R. Co. v. Jackson,* 55 Ill. 497. A witness can-
not testify as to the cognitions of another or as to what
another has seen.—*L. & N. R. R. Co. v. Perkins,* 165 Ala.
471; *Lacey v. Hendricks,* 164 Ala. 280; *Travis v. Sloss-
Shef. Co.,* 162 Ala. 605; *Cohn & Goldberg L. Co. v. An-
drews,* 150 Ala. 368; *Nave v. A. G. S. Ry. Co.,* 96 Ala.
266. Actual knowledge by employee in charge of train
that some one is likely to be on the track must be shown
before jury can find defendant, through such employee,
guilty of wantonness.—*A. G. S. v. Guest,* 144 Ala. 373;
*Perkins v. Bhm. Ry. & E. Co.,* 132 Ala. 470; *So. Ry. v.
Bunt,* 131 Ala. 591; *Glass v. Railroad Co.,* 94 Ala. 581;
*Nave v. A. G. S. Ry. Co.,* 96 Ala. 264; *A. G. S. v. Wil-*

*liams,* 140 Ala. 320; *So. Ry. v. Bunt,* 122 Ala. 487; *Bhm. Ry. & E. Co. v. Butler,* 135 Ala. 395; *M. J. & K. C. Ry. v. Smith,* 153 Ala. 127; *M. & C. Ry. v. Martin,* 117 Ala. 367.

HILL, HILL, WHITING & STERNE, W. H. & J. R. THOMAS, EUGENE BALLARD, and P. E. ALEXANDER, for appellee. Under the evidence in this case defendant's conductor was guilty of wantonness or its equivalent, reckless indifference to consequences.—*L. & N. v. Williams,* 55 South. 223; *A. G. S. v. Guest,* 144 Ala. 373; *M. J. & K. C. R. R. Co. v. South,* 153 Ala. 127; *B'ham Ry. Co. v. Jones,* 153 Ala. 167; *Ga. Pac. v. O'Shields,* 90 Ala. 29; *Bir. So. v. Powell,* 136 Ala. 232; *L. & N. v. Webb,* 97 Ala. 308; *Weatherly v. N. C. & St. L.,* 166 Ala. 575; 2 Thomp. on Neg. secs. 1572, 1695-97, 1717-19, and 1850; 4 Am. St. Rep. 364; 18 L. R. A. 63, and cases there cited. The damages directly followed the numerous wrongs which were proximately responsible for the injury.—*A. G. S. v. Arnold,* 80 Ala. 600; *L. & N. v. Young,* 168 Ala. 551. The court was not in error in declining to grant the motion for a new trial.—*Jones & Co., et al. v. Tucker,* 132 Ala. 305; *Williamson Iron Co. v. McQueen,* 144 Ala. 279; *Ala. Midland Ry. v. Brown,* 129 Ala. 286; *Anderson v. English & Webb,* 121 Ala. 272; *Terst Sons & Co. v. O'Neil,* 108 Ala. 250; *Morris v. West,* 101 Ala. 535; *Holland v. Howard Bros.,* 105 Ala. 539; *White v. Blair,* 95 Ala. 147; *Cobb v. Malone & Collins,* 92 Ala. 630; *Western Ry. v. Cleghorn,* 143 Ala. 399; *Southern Ry. Co. v. Burges,* 143 Ala. 374; *McClendon v. McKissick,* 143 Ala. 192; *Bingham v. Davidson,* 141 Ala. 559; *Smith v. Tombigbee & Sou. Ry.,* 141 Ala. 334; *B. R., L. & P. Co. v. Lindsey,* 140 Ala. 316; *Merrill v. Brantley & Co.,* 133 Ala. 539; *Callahan v. Nelson,* 128 Ala. 676; *Taylor v. Corley,* 113 Ala. 586; *Central of Ga. Ry. Co. v. White,* 56 South. Rep. 577.

SOMERVILLE, J.—The complaint alleges that de-fendant's servant in charge of its cars, while acting within his employment, willfully or wantonly ran said cars against or upon plaintiff, thereby proximately causing the injuries described. This sufficiently charges a willful or wanton injury, as uniformly held by this court.

A witness should not be allowed to state that another person does or does not know a particular fact, this being a mere conclusion, and ordinarily the allowance of such testimony, when properly objected to, is reversible error.—*L. & N. R. R. Co. v. Perkins,* 165 Ala. 471, 51 South. 870, 21, Ann. Cas. 1073, citing numerous cases. But where the witness has stated the facts upon which his conclusion is based, the allowance of his inference also does not necessarily require a reversal of the judgment.—*Evans v. State,* 120 Ala. 269, 25 South. 175. Plaintiff's witness Snyder was asked if Conductor Smith had been in on the spur track before the day of the accident, and he answered: "Oh, yes; he knew how many people crossed there." Defendant's motion to exclude this answer on the ground that it was irrelevant and a conclusion of the witness was overruled. The question was proper, and the affirmative answer, "Oh yes," was not subject to any objection. The additional and gratuitous statement of the witness was obnoxious to the rule above stated, but the objection to the *entire* answer was properly overruled.—*Hill v. State,* 146 Ala. 51, 41 South. 621.

But, if the witness was in a position to observe, he may be able to state that another person who was present *saw* stated conditions or occurrences which were visible and open to ordinary observation. This is the statement of a collective fact which the witness may well know with certainty, and which is in accordance with

common, every-day experience.—*International, etc., Co. v. Anchonda,* 33 Tex. Civ. App. 24, 75 S. W. 557; *C. of G. Ry. Co. v. Hyatt,* 151 Ala. 355, 43 South. 867. A cross-examination of the witness might have exposed the inadmissibility of his quasi conclusion, but this was not attempted.

In allowing several of plaintiff's witnesses to state that Conductor Smith saw the location of the mills and track and lumber, and saw people going on and crossing the spur track, the trial court committed no error; though, the facts being admitted, such collective statements may also without error be excluded.

It was proper for plaintiff, under the conditions exhibited, to show that no one came or was sent in advance or at the front of the cars on this occasion; that it was the usual practice to do that when cars were shoved or drawn in on the spur; that it was not customary to kick them in without warning, or without some one stationed at the front end to give warning; that plaintiff had no warning of any sort that the cars were coming as they did; and that the defendant company had prosecuted its business of switching cars on the spur without objecting to the lumber company's employees crossing the track as they were in the habit of doing.

It is to be observed that the situation here is altogether different from the ordinary case of persons crossing a railroad's tracks upon its own right of way. The spur was on the private premises of the lumber company, and was presumptively its property. It was not a highway upon which the defendant ran scheduled trains, or upon which it might switch its rolling stock ad libitum. It was, on the contrary, used merely as a service track for the lumber plant, and for the accommodation of its business. Its employees were in no sense trespassers when they went upon it or across it, but

were at least licensees equally with the employees and cars and engines of the railroad company. And, obviously, the latter had no right to presume, and, in the absence of some contract stipulation, no right to demand, that the track should be clear whenever it might be used or suddenly occupied by rolling stock.

These conditions justified the admission of the evidence above enumerated, and the court did not err therein. Nor was it improper to allow plaintiff to show that there was crossings at other points on the spur than the point of collision as illustrative of the general conditions surrounding the use of the track. The restrictions of proof in the case of public crossings are not applicable here.

The track ran in the midst of the lumber company's yard, and between and very near to its sawmill on one side and its planing mill on the other. Its employees had frequent occasion to cross this track in the prosecution of their work in and about its mills. According to some of the witnesses, some one was on the track continuously, and on an average of one every minute during the day. It was open to the jury to find from the frequency of Smith's visits to the yard, and his opportunities to observe these conditions while they were existent, that he was acquainted with them, and had ample knowledge of the dangers to these employees attendant upon the heedless and unguarded operation of engines and cars in the midst of such an environment.

Unquestionably it was defendants duty, under these conditions, to exercise a very high degree of care and diligence to avoid injuring those persons who were rightfully upon the track, and whose presence there at all times it was bound to anticipate.

The vital questions therefore, are: (1) Did the defendant, through its servant, Conductor Smith, in

charge of this train and these cars, omit any precaution for the safety of plaintiff, an employee rightfully on the track, which the circumstances justly demanded; (2) if so, was such omission, under the circumstances shown, an act of wanton negligence; and (3) was it the proximate cause of plaintiff's injury?

1. Flying switches, it is generally held, are not per se negligent.—33 Cyc. 953, and cases cited. But circumstances may stamp them as negligent, and in this case it was at least a question for the jury to determine. But whether negligent per se or not, "since such a practice is peculiarly dangerous, it creates a duty of unusual care on the part of the company; and there should be not only the usual signals of bell and whistle, but there should also be a flagman near the track or a watchman on the nearest approaching car, as well as other reasonably necessary precautions. [and] Where such acts are performed at a crossing in a populous town or city along which people are constantly accustomed to travel, it has been held to be negligence per se, although signals of alarm are given from the engine employed in the switching."—33 Cyc. 953b. In the present case the cars were "kicked" onto the spur by being pushed by a detached engine; the cars being then allowed to run on alone by the momentum given by the engine and by the force of gravity. This operation therefore falls within the principles that apply to the flying switch, and these principles are more vigorously applicable to a switch made upon private premises and in the midst of busy workmen.

Under the conditions here shown, the conductor's omission, if so found, to send a flagman ahead of the train to warn the employees of the approach of the cars, or to station a lookout on the foremost car for that purpose, or to adopt some other suitable and efficient means

of warning, must be regarded as negligence in law—this in view of the estimated speed of the cars, and of the obstructions to the view of those crossing the track, and . the impossibility of their hearing the noise of approaching cars while the mills were in operation, conditions inherently dangerous, and a knowledge of which might be fairly imputed to defendant's servant, Conductor 'Smith. —*L. & N. R. R. Co. v. Davis*, 91 Ala. 487, 8 South. 552. Some of plaintiff's evidence tends to show that it was not customary to "kick" the cars onto the spur, and that when the trains went upon it a flagman was sent ahead or stationed on the front end—a significant admission, if believed, of the requirements of the situation.

2. To the conditions above stated but one additional element is needed to render the omission of Conductor Smith to take the precautions suggested one of wanton neglect, viz., conscious knowledge by him of the very frequent if not continuous presence upon the spur of some one or more of the lumber company's employees, and of the likelihood that omission of these precautions would probably result injuriously to some one exposed to danger. Under the evidence these were jury questions, and it was fairly open to the jury to find Smith guilty of that reckless indifference to consequences which would constitute wanton wrong.—*B'ham So. R. R. Co. v. Powell*, 136 Ala. 232, 242, 33 South. 875. This conclusion does not seem to be seriously controverted by appellant, and is, indeed, scarcely open to question.

3. Defendant's main contention, urged with much force and logic, is that, conceding the omission by Smith of all the precautionary duties suggested and demanded by the situation, yet as matter of law his negligence was not the proximate cause of plaintiff's injury, and hence defendant was entitled to the general

affirmative charge on the whole case.

Our consideration of this contention does not, however, persuade us of its validity. We do not feel justified in finding as a conclusion of law that, had a flagman been sent ahead of the cars, or had a brakeman been stationed on the end of the foremost car, plaintiff would not have been seasonably warned of coming danger; nor that, passing from the narrow passageway albeit almost immediately upon the track; plaintiff's imminent catastrophe would not have been detected in time for a warning cry to reach him soon enough to avert or mitigate the tragic result.

Our conclusion is that the trial court did not err in refusing to give for defendant the general affirmative charge.

Several special charges requested by defendant were also refused. In the main these charges were framed upon the theory that this case is analogous to the case of injury to a trespasser at a public crossing or other point on a railroad highway—a theory which is entirely erroneous and untenable.

We notice these charges briefly:

Charge 9 is argumentative, and unduly emphasizes some phases of the case. It also invades the province of the jury in attempting to instruct them as an absolute conclusion, regardless of conditions, that shoving the cars on the spur was not evidence of negligence.

Charge 11 misapplies the rule of public crossings, which is not germane to this case. It was not necessary that the *public* should have customarily used or crossed this track, nor that defendant's servant should have actually discovered plaintiff's peril before his injury, in order to make defendant liable.

Charge 13 requires as a condition to defendant's liability that the cars must have been shoved on the spur

"at a high and rapid rate of speed." Though some of the cases may have used this expression in respect to negligence at public crossings of railroads, or like places, it is plainly inappropriate here. "Speed" is a relative term, and a rate of speed which would be deemed "high and rapid" under some conditions would be deemed low and slow under others. It would have been highly misleading to have thus instructed the jury, under the conditions here shown. The speed that is reprehensible is a *dangerous rate of speed under the circumstances.—A. G. S. R. R. Co. v. Guest,* 144 Ala. 373, 381, 39 South. 654. A comparatively low rate of speed may have been highly dangerous here, and so may have been a legitimate predicate for the imputation of wantonness.

Charge 15 is erroneous, or at least misleading, in requiring a finding that *all* the agents or servants in charge of defendants cars had knowledge of the specified conditions and united in intentionally running the cars as charged. This is not the law. It was here sufficient if Smith alone had the knowledge and ran the cars recklessly. Moreover, charges 10 and 14 given for defendant substantially cover the principle invoked by this charge.

Charge 16 is erroneous in its designation of plaintiff as a trespasser on the track.

Charge 17 is erroneous in requiring that there should have been crossing of the spur by *the public,* and argumentative and misleading in requiring that such crossing should have been *continual.* The true requirement is that the crossing must be of such frequency and in such numbers as to inform and warn the carrier's servant that some one is probably on the track at the particular time, and will probably be injured by running the cars at a dangerous speed without lookout and warning

signals.—*Ga. Pac. Ry. Co. v. Lee,* 92 Ala. 271, 9 South. 230; *M. & C. R. R. Co. v. Martin,* 117 Ala. 367, 385, 23 South. 231; *Southern Ry. Co. v. Stewart,* 179 Ala. 304, 60 South. 927.

It follows that each of these several charges was properly refused.

There was a motion by defendant to set aside the verdict because contrary to the evidence, and also because excessive in amount. The damages awarded to plaintiff by the verdict of the jury are heavy. In the trial court defendant unsuccessfully moved for a new trial on the ground that the verdict was excessive in amount, and the record presents that question for our consideration here.

The jury found that plaintiff was entitled to recover damages for a wanton injury. It was their duty, therefore, to compensate him for that injury as nearly as possible, and in accordance with those standards by which an approximately just result is supposed to be reached. And it was within their discretion to further award to plaintiff such sum, not palpably unreasonable in view of the nature and circumstances of the wrong, as in their judgment would fitly punish the defendant corporation for the wanton act of its servant. It seems evident that they have exercised that discretion by the incorporation of punitive damages in their award.

The revision of such verdicts on the ground complained of has been a matter of frequent consideration by this court, and, indeed, by the appellate courts of all the states.

A statement of the grounds upon which interference with such verdicts is justified on appeal in this state will be found in *Central of Ga. Ry. v. White,* 175 Ala. 90, 56 South. 574, together with a review of some of the cases. A very exhaustive and valuable collation and

synopsis of the American cases will be found in the notes to *Cleveland, etc., R. Co. v. Hadley,* 170 Ind. 204, 82 N. E. 1025, 84 N. E. 13, 16 L. R. A. (N. S.) 527, 16 Ann. Cas. 8; and *Ruck v. Milwaukee Brewery Co.,* 148 Wis. 222, 134 N. W. 914, Ann. Cas. 1913A, 1361.

In other jurisdictions we find a number of cases, where the plaintiff has suffered the loss of both legs, in which verdicts of $25,000, $27,500, $30,000, and, in two cases, $35,000, have been sustained as not excessive. In some of these it appears that the plaintiff's earning capacity was considerably greater than that of the plaintiff here; but, while that may be an important element, it cannot be regarded as a controlling factor in the amount of the verdict.—*Gulf, etc., R. Co. v. Shelton,* 30 Tex. Civ. App. 72, 69 S. W. 653; Id., 70 S. W. 359; *Texas, etc., R. Co. v. Matkin* (Tex. Civ. App.) 142 S. W. 604; *Whitehead v. Wisconsin, etc., R. Co.,* 103 Minn. 13, 114 N. W. 254, 467; *Yazoo, etc., R. Co. v. Wallace,* 91 Miss. 492; 45 South. 857; *Union Pac. R. Co. v. Connolly,* 77 Neb. 254, 109 N. W. 368; *St. Louis, etc., R. Co. v. Rogers,* 93 Ark. 564, 126 S. W. 375, 1199; *Reeks v. Seattle Elec. Co.,* 54 Wash. 609, 104 Pac. 126.

For the loss of one leg only, a verdict for $25,000 was sustained in *Ehrman v. Brooklyn City R. Co.,* 131 N. Y. 576, 30 N. E. 67; for $22,500, in *Williamson v. Brooklyn Heights,* 53 App. Div. 399, 65 N. Y. S. 1054; and for $20,000 in *Texas, etc., R. Co. v. Brouillette,* (Tex. Civ. App.) 130 S. W. 886.

These verdicts, it is freely conceded, do not illustrate the *average* conceptions of juries, as shown by the general run of the cases reviewed in the two notes referred to, and in the brief for appellant. But, as noted by the editor of Annotated Cases (16 Ann. Cas. 10), the tendency in recent years has been for verdicts to award, and appellate courts to sustain increasingly larger sums

as compensation for personal injuries. This is attributable, no doubt, to the greatly decreased purchasing power of a dollar, as examplified in the rise in the price of nearly all commodities, and the enormous increase in the cost of living; and, in some measure, perhaps, to a higher regard for human life and the value of physical efficiency. It may be conceded that this verdict is in excess of our notions of what would be fit and just, having due regard to both compensation and punishment, and that some limit must be fixed somewhere to the expanding verdicts of juries in cases of this character. The question is in large measure, at least in its final analysis, an economic one, and its ultimate solution must perhaps be found in the adoption of general compensation acts as the best remedy for the economic waste and ethical demoralization attendant upon the present system—a policy which seems to be growing in favor among all enlightened people.

We have given very careful consideration to the case before us, and are unable to deduce, either from the circumstances of the case, or from a comparative study of other cass in this and other jurisdictions, the necessary conclusion that the verdict was the manifest result of passion, prejudice, corruption, or mistake, on the part of the jury.

Finding no prejudicial error in the record, the judgment will be affirmed.

Affirmed.

DOWDELL, C. J., and MCCLELLAN and SAYRE, JJ., concur. DOWDELL, C. J., does not concur in all that is said upon the subject of excessive verdicts.